377 So.2d 319 (1979)
A. J. GUIDRY et al.
v.
Eugene THERIOT et al.
No. 64663.
Supreme Court of Louisiana.
November 12, 1979.
*320 Ralph L. Kaskell, Jr., New Orleans, for defendants-applicants.
Edward J. Castaing, Jr., New Orleans, for plaintiffs-respondents.
LANDRY, Justice Ad Hoc.
Writs were granted in this matter to review the Court of Appeal judgment holding that a survival action instituted pursuant to La.C.C. Article 2315, by the major heirs of a tort victim, was timely filed when brought more than one year after the death of the decedent who had filed suit for her own injuries during her lifetime, and which judgment also held that the wrongful death suit brought by the children at the same time as the survival action, was prescribed. We affirm.
On February 20, 1974, A. J. Guidry and his wife, Jane Guidry, sued Dr. Eugene Theriot and his insurer, Continental Casualty Company, for damages sustained by Mrs. Guidry because of Dr. Theriot's alleged malpractice *321 prior to July 9, 1973, while Mrs. Guidry was under his treatment and care. Mrs. Guidry died July 9, 1974, and, more than four years later, on March 28, 1978, Mr. Guidry filed a supplemental petition in the pending action in which he sought to substitute himself as party plaintiff in a survival action pursuant to Article 2315, above. Mr. Guidry's supplemental petition also asserted a wrongful death action on his own behalf. Three days later on March 31, 1978, a second supplemental petition was filed asserting survivorship and wrongful death claims on behalf of decedent's three major children, Blake P. Guidry, Brad J. Guidry and Bessy Guidry Lannep.
Defendants responded to the pleadings by filing exceptions of peremption and no cause of action. The trial court sustained the exceptions as to the children and dismissed both their survival and wrongful death demands. The exceptions filed in opposition to the husband's claims were dismissed, which dismissal is a non-appealable interlocutory judgment. LSA-C.C.P. Article 1841.
On appeal, the Court of Appeal, First Circuit, held that the survival action had been improperly dismissed because the one year period provided in Article 2315, above, is inapplicable when the tort victim files suit prior to his or her death. The court so held upon finding that once the victim files suit on his or her own behalf and later dies, the beneficiaries named under Article 2315, above, are required only to substitute themselves as party plaintiffs in accordance with LSA-C.C.P. Article 801 within the five year abandonment period stipulated in LSA-C. C.P. Article 561.
The Court of Appeal also held that the one year prescriptive period of La.C.C. Article 3536, applied to the children's wrongful death action, and dismissed their wrongful action as prescribed. From said ruling the children have appealed. Defendants have also appealed seeking reversal of the Court of Appeal judgment which refused to dismiss the survival action of the children.
Writs were granted herein to review the correctness of the lower court's decision and resolve certain conflicts in the decisions of the courts of appeal.

ONE CAUSE OF ACTION OR TWO?
Article 2315, above, provides as follows:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse. The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they have sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.
As used in this article, the words `child', `brother', `sister', `father', and `mother' include a child, brother, sister, father, and mother, by adoption, respectively." (Emphasis added)
The foregoing codal provision has been a prolific source of jurisprudential and doctrinal discussion and debate, resulting in continued uncertainty as to its true application. For a most scholarly discussion of the resultant problems and an explanation of how they arose, see Johnson, Death on the Callais *322 Coach; The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La.L.Rev. 1 (1976). Among the recurring questions presented, is included that of whether the article creates one cause of action or two distinct and separate causes of an action. The answer to this specific question must be disposed of initially inasmuch as we believe a different result is dictated if there is but one cause of action than would be proper if the article creates two causes of action.
On its face, Article 2315, above, appears to grant the designated beneficiaries two separate and distinct causes of action, totally unrelated to each other. First, beneficiaries are given the right to recover the damages which the victim suffered and would have been entitled to recover from the tort feasor, if the victim had lived. This is commonly referred to as the "survival action" which, by the express terms of the Article, survives the death of the injured party and passes to the beneficiaries as an inheritable property right. In addition, the named beneficiaries are granted the right, if the victim dies as a result of the tort, to recover from the tortfeasor such damages as the beneficiaries have suffered as a result of the victim's wrongful death. This is ordinarily denominated as the "wrongful death action".
The nature of these two rights have been the subject of many decisions of this court and the intermediate appellate courts of this state and the subject of numerous articles by legal scholars. In Reed v. Warren, 172 La. 1082, 136 So. 59 (1931), this court stated that the wrongful death action was "not independent of but dependent upon" the survival action and it was indicated therein that these rights were "founded upon the same cause of action".
In his article Death on the Callais Coach, supra, Professor Johnson maintains that the language generally cited from Reed, above, is not authority for the principle that the survival and wrongful death actions established by Article 2315, above, are in fact a single cause of action. Another writer feels that some language in Reed, above, although dicta, supports the position that the two actions are but a single action. See 39 La.L. Review 1249 at n. 49.
In more recent pronouncements by this court, these two rights have been characterized as "entirely separate and independent of each other," Callais v. Allstate Insurance Co., 334 So.2d 692 (La.1975), on original hearing; and as "two types of death actions," Callais, above, on rehearing, and in McClendon v. State, Through Department of Corrections, 357 So.2d 1218 (La.1978), as "two separate and distinct actions."
We conclude that each of these actions is a separate and distinct cause of action. Although both actions arise from a common tort they are, nevertheless, separate and distinct because each arises at a different time. The survival actions comes into existence simultaneously with the commission of the tort and is transmitted to the beneficiaries upon the victim's death. The wrongful death action does not arise until the victim dies. Each right addresses itself to the recovery of damages for totally different injuries and losses. The survival action permits recovery only of the damages suffered by the victim from the time of injury to the moment of death. The wrongful death action is intended to compensate the beneficiaries for compensable injuries suffered from the moment of death and thereafter.
If the actions are deemed but one cause of action giving rise to recovery by different individuals it would follow that in the event the victim compromised his claim and then died the wrongful death action would be lost to the beneficiary. We do not believe the legislature intended such a result.
To put the issue at rest, we conclude and hold that the rights arising in instances of this nature are not a single right of action but two separate and distinct actions.

THE SURVIVAL ACTION
Before enactment of the Louisiana Code of Civil Procedure in 1960, Article 2315 beneficiaries were granted one year from the date of the victim's death to bring *323 their survival action, regardless of whether the victim had filed suit prior to death. See, Gabriel v. United Theatres, 221 La. 219, 59 So.2d 127 (1952); Lally v. Taylor, 117 So.2d 602 (La.App.Orl., 1960); Romero v. Sims, 68 So.2d 154 (La.App. 1st Cir., 1953); Miller v. American Mut. Liability Ins. Co., 42 So.2d 328 (La.App. 1st Cir., 1949). In large measure, these decisions were based on the concept that "both at common law and at civil law a right of action for damages for personal injuries does not survive in case of death." Miller v. American Mut. Liability Ins. Co., above. It followed that since the victim's action did not survive his death, beneficiaries under 2315 were dependent upon that article for both the right to reinstitute the action and the time in which to do so. Lally v. Taylor, above. The cited authorities held that the provisions of La.Code of Practice, Article 21, and LSA-R.S. 13:3349, providing for non-abatement of actions, were inapplicable to Article 2315 claims because an action in tort was personal and nonheritable. In McConnell v. Webb, 226 La. 385, 76 So.2d 405 (La.1954), it was held that the non-abatement statutes were too broad in scope and were held to be inapplicable to personal actions.
Article 2315, above, was amended concurrently with the enactment of our Code of Civil Procedure, in 1960. The changes effected by this legislative package are reviewed in excellent manner in J. Wilton Jones Co., Inc. v. Liberty Mutual Insurance Company, 248 So.2d 878 (La.App. 4th Cir. 1971). Jones involved facts substantially the same as those involved herein. The plurality held that if the victim instituted suit prior to her death, the beneficiaries designated in Article 2315, were not subject to the one year limitation in that article, and could substitute themselves as plaintiffs within the five year abandonment period provided by La.C.C.P. Article 561. In reaching its decision with respect to the survival action, the Court of Appeal, in this instance relied upon Jones, above.
La.C.C.P. Article 428, provides that, excepting only a right or action which is strictly personal, an action does not abate on the death of a party. The official revision comment indicates the intent of the article is to "abrogate the harsh jurisprudential rules" on abatement and survival of actions and "to attain the original objectives of the Livingston committee which drafted the 1825 Codes." The Comment indicates that the intent of the Livingston committee was to make "every effort possible to prevent judicial acceptance by Louisiana of the harsh and technical common law rules of abatement and survival of actions." Article 428, above, official revision comment (a). The obvious intent of Article 428, above, was to legislatively overrule the jurisprudence which had adopted the common law rule that a tort action abates on the death of the victim.
It is noteworthy that Article 428, above, admits of an exception in the case of a strictly personal action. This exception recognizes the too far reaching effect of prior nonabatement provisions. See Comment (c), Article 428, above. The unrestricted scope of prior statutes was one of the primary reasons why the courts refused to apply their non-abatement provisions in a survival action. See McConnell v. Webb, 226 La. 385, 76 So.2d 405 (La.1954). McConnell, however, has been the subject of critical analysis. See Snellings, Certain Aspects of Heritable Obligations, 30 Tul.L. Rev. 305 (1956); Comment Abatement of Actions in Louisiana, 15 La.L.Rev. 722 (1955). Since Article 428 now provides a specific exception to its non-abatement provision, non-abatement of the survival action follows as a matter of course, unless the victim's action for her own personal injuries is deemed strictly personal.
La.C.C. Article 1997 provides that "(a)n obligation is strictly personal, when none but the obligee can enforce its performance, or when it can be enforced only against the obligor."
La.C.C. Article 1999 states that "(e)very obligation shall be deemed heritable as to both parties, unless the contrary be specially expressed, or necessarily implied from the nature of the contract."
*324 We reaffirm the holding in Jones, above, that a victim's action for recovery of tortious damages is not strictly personal because it is a right to recover money damages that result in a benefit for the victim's heirs. Article 2315 expressly transmits the survival action to beneficiaries, a circumstance not indicative of a strictly personal action. Although it must be conceded that only a limited class of beneficiaries is established this affects only the right of heritability, not the nature of the right inherited.
Other considerations support the conclusion that La.C.C.P. Article 428 was intended to apply to an action instituted by a tort victim to recover for his damages, because such an action is not personal and therefore does not abate upon his death. Prior to the 1855 amendment to Article 2294 of the Civil Code of 1825 (the source of Article 2315), which provided for a survival action, this court noted in Vincent v. Sharp, 9 La.Ann. 463 (1854) that: "It is insisted . . . that a personal action for damages for a tort, expires with the person who instituted it. We are not aware of any such rule in our jurisprudence." We acknowledge that Vincent, above, was rendered prior to importation into our jurisdiction of the harsh common law rule on abatement and survival of actions, which has since been expressly abrogated by the intent of and common on La.C.C.P. Article 428".
These same views are expressed in McMahon, The Louisiana Code of Civil Procedure, 21 La.L.Rev. 1, (1960), a Comment on the Code of Civil Procedure Articles on abatement and the amendments to Article 2315 enacted concurrently with the revised non-abatement provisions of La.C.C.P. Article 428. McMahon commented as follows: "After months of groping for effective solutions of the various problems in this area (abatement of actions), the Law Institute concluded that no effective solutions were possible without an amendment of Article 2315 of the Civil Code . . . With these changes the remaining problems are solved simply through a basic article (article 428) providing that no actions abate on the death of a party, except those to enforce a right or obligation strictly personal." In this connection we note that the effectiveness of Act 30 of 1960, which amended Article 2315, was specifically conditioned upon the adoption of Act 15 of 1960, which contained the new Code of Civil Procedure.
Additionally, while the amendment to Article 2315, did not expressly provide that a victim's action once instituted, does not abate on death, other language in the article contains clear legislative intent that the survival action is not a personal right. We note particularly the language that a survivor's right to recover "under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his ... heirs, whether suit has been instituted thereon by the survivor or not." It taxes our imagination to conclude that a right which is heritable by a designated beneficiary and when acquired is transmissible to his heirs, is personal to the tort victim in whose favor the right originally arose.
Defendants maintain that even if the action does not abate, the survival action is governed by the time limitation of one year contained in Article 2315. We disagree. If, as we have held, the action does not abate, it then becomes subject to the provisions of La.C.C.P. Article 561, which provides that an action is abandoned when the parties fail to take any step in the prosecution or defense in the trial court for a period of five years.
There is significant difference between inheriting an instituted action and inheriting the right to institute an action. We interpret Article 2315 to mean that if the victim dies within a year of injury and has not instituted claim, the beneficiary may institute the action within one year of the death. If the beneficiary should die within that year, the heirs of the beneficiary inherit the beneficiary's right to institute the victim's action. Since, however, Article 2315 does not give the beneficiary's heirs additional time in which to institute action, the heirs inherit only the right to institute suit within the remaining time allowed *325 the beneficiary. We hold, therefore, that the action whether by the beneficiary or his heirs, must be instituted within one year of the victim's death when no action was instituted by the victim.
When, however, a party dies during pendency of an action which is not extinguished by death, his legal successor may substitute himself for the deceased party upon making proper proof of his qualifications as legal successor. La.C.C.P. Article 801. We note also La.C.C.P. Article 801(1) which provides that legal successor, as used in Articles 801 through 804, includes the survivors designated in Article 2315, of the Civil Code, if the action survives in their favor.
An action is defined in La.C.C.P. Article 421 as "a demand for the enforcement of a legal right." The comments to this article indicate that "action" has been used to mean both an "instituted right" and the "right to institute an action", but comment (a) article 421 notes that "action" in the Code of Civil Procedure refers only to an instituted action unless it is otherwise clearly expressed. It follows, La.C.C.P. Article 801 refers only to an instituted action.
We hold, therefore, that once an action has been instituted under article 2315, whether by the victim, a beneficiary or the heirs of a beneficiary the prescriptive period of that article no longer applies to the survival action but rather the nonabatement and substitution provisions of La.C. C.P. Articles 428, 561 and 801 are controlling. This we believe to be the intent of the legislative package of 1960, hereinabove discussed.

THE WRONGFUL DEATH ACTION
Defendants contend the wrongful death action is subject to the rules of peremption (which admits of neither suspension nor interruption) rather than prescription. This argument is based primarily on the premise that article 2315 prescribes a one year period for bringing such an action. Simply put, defendants argue that since the period for bringing a wrongful death action is peremptive and the action was not brought during the uninterruptible year following death, the action is untimely and must be dismissed. For reasons which follow, we conclude the period is prescriptive, not peremptive.
The source provision of present La.C.C. Article 2315, was Article 2294 of the Civil Code of 1825. Act 223 of 1855, amended Article 2294 to provide that a tort victim's action survived in favor of named beneficiaries "for the space of one year from death." This amendment did not create an action for wrongful death. Despite subsequent amendments to present article 2315 the one year period for bringing the survival action remains the only time limit specified therein. The wrongful death action was incorporated into 2315 by Act 71 of 1884, which provided no time limit for bringing such a suit.
Our jurisprudence has indicated that the test for determining whether a period for instituting an action is peremptive or prescriptive, is whether the statute creating the right also stipulates the time in which it must be exercised. See, for example, Guillory v. Avoylles Ry. Co., 104 La. 11, 28 So. 899 (1900); Matthews v. Kansas City Southern Ry. Co., 120 So. 907 (La.App. 2d Cir. 1929); overruled by Mitchell v. Sklar, 196 So. 392 (La.App. 2d Cir. 1940).
In Pounds v. Schori, 377 So.2d 1195, rendered this day, we addressed the question thus presented and concluded that specification of the time limit for bringing an action in the same statute that created the right of action, is not the sole test of peremption as distinguished from prescription. In Pounds, above, we held that peremption, as differentiated from prescription, is a matter to be determined by legislative intent revealed by the statute in its entirety, including the purpose sought to be achieved.
We additionally noted in Pounds, above, that public policy may also influence the determination of whether a statute is intended to be peremptive rather than prescriptive. We found in Pounds, above, impelling reasons of public policy why the statute therein involved should be held peremptive. *326 We find no such impelling influence in this case.
Had the legislature intended the wrongful death action to be governed by the time limitation contained in Article 2315 with respect to the survival action, it could, in its numerous amendments to the article, have easily so provided. The survival and wrongful death actions were created by separate amendments, in successive sentences. As previously shown, each action is a separate and distinct cause of action.
The survival action is transmitted by the victim to the beneficiary who has one year from the date of the victim's death to bring the survival action if the victim died within a year of injury and without having brought suit. In such instances the beneficiary is in effect the recipient of a time bonus of more than one year in which to institute the victim's action. We deem it reasonable that the legislature would be concerned about the interval during which a potential defendant might be vulnerable to a survival action and therefore foreclosed the issue by providing an express time limitation.
These same considerations are not necessarily applicable to the totally separate and distinct wrongful death action which is a tort action that arises upon the death of the victim. It is not inherited, neither is it transmitted. From its inception it arises and exists only in favor of the beneficiary. Because Article 2315, does not provide a time limitation for the wrongful death action, we can conclude that it intended the general tort law of La.C.C. Article 3536, which provides a prescriptive period of one year, applies to the action for wrongful death.
This court has never held that a wrongful death action is subject to peremption. See Wrongful Death: Presumption? Peremption? Confusion? Gerald J. Talbot, 39 La. L.Rev., 1239, 1243 n. 20 (1979). On the contrary, we indicated in Trahan v. Liberty Mutual Insurance Co., La., 314 So.2d 350 (1975) that such an action is controlled by the general one year prescriptive period of La.C.C. Article 3536.
Recently, in McClendon v. State, Through Department of Corrections, 357 So.2d 1218 (La.App. 1st Cir. 1978) the First Circuit considered the issue before us. McClendon, noted the numerous approaches taken by prior jurisprudence and, after consideration of all aspects of the question, found that the applicable period is prescriptive rather than peremptive.
McClendon discussed Matthews v. Kansas City Southern Ry. Co., above, in which the Second Circuit held that the time allotted for a wrongful death action is peremptive. Matthews, so held on the ground that use of the word "also" in the 2315 provision that beneficiaries "may also" recover damages for wrongful death, subjects the wrongful death action to the same conditions attending the survival action, including the one year limitation which was held to be peremptive. The First Circuit, in McClendon, above, disagreed with Matthews and found that "also" meant, as we have concluded, that the wrongful death action thus granted was a new and different cause of action in addition to the survival action previously existing.
We hold, therefore, that although the wrongful death action arises from a common tort, it is a separate and distinct action from the survival action. It never existed or arose in favor of the victim.

WAS THE PRESCRIPTIVE PERIOD OF THE WRONGFUL DEATH ACTION INTERRUPTED OR SUSPENDED?
Since the one year period applicable to wrongful death actions is prescriptive, the childrens' wrongful death action has prescribed unless it was interrupted. The circumstance relied upon for interruption is the continued existence of the survival action. Having concluded the actions are entirely separate and distinct rather than one cause of action, the issue thus posed is whether filing of suit on one cause of action interrupts prescription on an entirely separate and distinct cause of action.
On October 8, 1979, we rendered Allstate Insurance Company v. Theriot, et al., 376 *327 So.2d 950, Number 63,466, the benefit of which the Court of Appeal could not have had at the time it rendered the opinion presently under review. Allstate, above, requires discussion in view of the conclusions reached herein.
In Allstate, above, an employer's insurer (Allstate) filed suit against a third party tort feasor (within a year of the accident) for tortious injury of an employee allegedly caused while the employee was returning from medical treatment for an earlier work-related injury. Allstate sought recovery on the ground that Theriot's negligence aggravated the employee's injury requiring Allstate to pay additional medical expense and compensation for the tort aggravation of the initial work-related injury. After the year expired, the employee intervened in Allstate's action, seeking damages for the same injury and same alleged negligence. The Court of Appeal affirmed dismissal of Allstate's suit, as stating no cause of action and also dismissed the intervention (which did state a cause of action), on the ground that the intervention fell with the dismissal of the principal demand. Allstate Insurance Company v. Theriot, 362 So.2d 1117 (La.App. 4th Cir. 1978). Allstate's request for certiorari was denied but certiorari was granted the employee to review dismissal of his intervention.
The question in Allstate, above, was whether Allstate's timely petition interrupted prescription as to the employee's claim, notwithstanding Allstate's demand was held not to have stated a cause of action.
Allstate, above, held that for purposes of prescription, La.R.S. 23:1101-03, pursuant to which plaintiff therein sued and the employee intervened, provides that either insurer or employee are expressly given a right of action against the tortfeasor, consequently only one principal demand is involved.
Allstate went further and held that where a defendant knows or should know, prior to expiration of a prescriptive period, that legal demands are made on him from the occurrence described in the petition, prescription is interrupted, citing Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La. 1973).
Next Allstate recognized that where the subsequent claimant is a different person than the original plaintiff, to interrupt prescription, the first suit must not only be based on the same factual occurrence as the initial action, but must also be connected in close relationship and identity of interest with the original plaintiff. The rationale of the decision is that prescription is interrupted on the subsequently filed claim because the initial action affords defendant adequate and timely notice on behalf of the indicated interests that liability arising out of the factual occurrence pleaded is sought to be enforced against him.
Assuming, arguendo, Allstate were applicable herein, it can be of no comfort to the children beneficiaries in this instance. As regards their wrongful death action, the beneficiaries must sue in their own right on a cause of action that accrued to them upon their mother's death, separate and distinct from their survival action. While they may be substituted as parties to the survival action, they must have instituted their wrongful death action within the one year period provided by L.C.C. Article 3536. Assuming prescription was interrupted by the filing of the initial action by the tort victim and the father of these beneficiaries, it was incumbent upon them to bring their wrongful death action within one year of the interruption which they did not do. We expressly hold that regardless of whether an action is brought for damages sustained by the tort victim, before or after the victim expires, the prescriptive period of bringing the wrongful death action is one year after date of the demise or within one year of interruption of the prescriptive period if an interruption is shown.
We have expressly held that the survival and wrongful death actions are separate and distinct causes of action, entirely independent of each other. We also expressly hold that regardless of whether or not suit is instituted by a tort victim during his life, his named beneficiaries must bring their wrongful death action within one year of *328 the victim's death pursuant to the provisions of La.C.C. Article 3536. This is so because they do not bring the wrongful death action as substituted parties, in which capacity they may bring the survival action to recover the victim's damages. They must bring their wrongful death action as original plaintiffs suing on a different cause of action which arose upon the victim's death. We have also held that the one year period involved is prescriptive, not peremptive.
Assuming, arguendo, the principles of Allstate v. Theriot, above, are applicable herein, it would make no difference in the determination of this matter. Allstate v. Theriot, above, is factually distinguishable in one crucial aspect. In Allstate, prescription was found to have been interrupted and the intervention was filed within a year of the interruption. In this instance, assuming, prescription was interrupted by the suit filed on February 20, 1974, the present beneficiaries did not bring their action until March, 1978, long after the interrupted period had expired.

DECREE
The judgment of the court of appeal sustaining the exception of prescription to the children's wrongful death action is affirmed and said action dismissed at said plaintiff's cost.
The judgment of the court of appeal overruling the exception of prescription to the children's survival action is affirmed and this matter remanded to the trial court for trial of the children's survival action.
Affirmed.