Mrs. Linda Harper HOLDEN, Individually and as Natural Tutrix of the Estates of her minor children, Melvin Scott Holden, Sandra Kay Holden, and Blake Alan Holden, Plaintiff,

v.

PLACID OIL COMPANY, Defendant.

Mildred M. TURNBULL, Individually and for and on behalf of the Estate of Edward E. Turnbull, Plaintiff,

v.

The HARTFORD INSURANCE CO., Placid Oil Corporation and Michigan-Wisconsin Pipeline Corporation, Defendants.

Mrs. Robert JACKSON, Individually and as Tutrix of the minor child, Marylee Kay Jackson, Plaintiff,

v.

T. K. VALVE & MANUFACTURING, INC., Hartford Accident & Indemnity Co., ABC Insurance Company, Gulf Coast Machinery & Supply Co., XYZ Insurance Company, Michigan-Wisconsin Pipeline Corporation, Harbor Insurance Company, Republic Steel Corporation and Travelers Insurance Company, Defendants.

Mildred M. TURNBULL, Plaintiff,

v.

REPUBLIC STEEL CORPORATION, Gulf Coast Machine and Supply Company and Travelers Indemnity Company, Defendants.

Civ. A. Nos. 75–3236, 75–3333, 76–2442 and 76–2799.

United States District Court, E. D. Louisiana.

July 28, 1980.

Patrick T. Caffery, New Iberia, La., for defendant Gulf Coast Machine & Supply Co.

Norman C. Sullivan, Jr., Donald L. King, New Orleans, La., for defendants Republic Steel Corp. and The Travelers Indem. Co.

Dean A. Sutherland, Lake Charles, La., for defendant Placid Oil Co.

Charles E. Leche, Tyler S. Posey, New Orleans, La., for defendants T. K. Valve & Mfg., Inc. and The Hartford Acc. and Indem. Co.

Mark J. Spansel, Robert A. Vosbein, New Orleans, La., for intervenor National Union Fire Ins. of Pittsburgh, Pa.

CASSIBRY, District Judge:

## MOTION FOR SUMMARY JUDGMENT

The case is a result of an explosion in a pipeline on a fixed platform in the Gulf of Mexico in September of 1975. The explosion killed three workmen who were near the pipeline on the fixed platform. It appears that the explosion was caused by a defective valve in the pipeline.

The families of the three workmen brought wrongful death suits. They sued the owner of the platform, the owner of the pipeline, and all those responsible for the manufacture and installation of the allegedly defective valve.[1] All three suits were filed within one year of the accident. Also within one year of the accident, albeit on the 365th day, the pipeline owner filed a cross-claim for indemnity and/or contribution against its co-defendants who were involved in the manufacture and installation of the valve.

Almost three years after the accident, on June 26, 1978, the pipeline owner (through its subrogated insurer) was allowed to intervene in the consolidated wrongful death suits. It sought to recover its "business interruption loss" sustained during the time the pipeline was out of commission and the valve was being fixed. The insurer sued the same defendants who the owner had named in its cross-claim for indemnity— those involved in the manufacture of the valve.

The claims for wrongful death were settled by the various companies with the families in July, 1979. The parties were unable to compromise the intervention claim, however, because the defendants argued that the claim is barred by prescription. The only remaining issue, therefore, involves the claim for business interruption loss by the insurer of the pipeline owner.

A. *Did the filing of the cross-claim for indemnity interrupt prescription for the claim for business interruption loss?*

■ All parties agree that the relevant period of liberative prescription in Louisiana is one year for tort causes of action. *See* La.Civ.Code Ann. art. 3536 (West 1953). Because the intervention was filed almost three years after the accident that caused the loss, movants contend the claim has prescribed. Intervenor relies on a special interruption statute, that provides in pertinent part:

> All prescriptions affecting the cause of action therein sued upon are interrupted as to all defendants, including minors or interdicts, by the commencement of a civil action in a court of competent jurisdiction and in the proper venue.

La.Rev.Stat.Ann. § 9:5801 (West Supp. 1980). Intervenor argues that the cross-claim for indemnity, timely filed less than one year after the accident, interrupted prescription for the claim for business interruption loss that is based on the same "cause of action".

The almost metaphysical question of what constitutes a cause of action could gray the hair of even the most persistent legal scholar. There appears to be no single definition of cause of action in the Louisiana cases. It is necessary to read the language of all of the cases in light of their

[1.] The various defendants named in the suits are Placid Oil Company, the owner of the platform; Michigan-Wisconsin Pipeline Company, the owner of the pipeline; T. K. Valve & Manufacturing, Inc., the manufacturer of the ruptured valve, and its insurer, The Hartford Accident & Indemnity Company; Gulf Coast Machine & Supply Company, the manufacturer of a rough steel forging that was incorporated into the body of the valve; and Republic Steel Corporation, the maker of the steel used in the valve body, and its insurer, The Travelers Indemnity Company. The intervenor is National Union Fire Insurance Company of Pittsburgh, Pa., the insurer of Michigan-Wisconsin.

respective facts and compare them with the facts of each new case. Fortunately, a Louisiana state appellate court recently decided a case with facts virtually identical to those of the case at bar. The case, *Brown & Root v. Missouri Pacific Railroad Co.*, 381 So.2d 1255 (La. 4th Cir.Ct.App.), *writs denied*, 385 So.2d 794 (La.1980), leads me to the conclusion that the interruption statute does not apply here. Moreover, even if the statute did apply, the intervention was still filed too late.

The seminal case by the Louisiana Supreme Court that applied section 9:5801 is *National Surety Corp. v. Standard Accident Insurance Co.*, 247 La. 905, 175 So.2d 263 (La.1965). In that case, a cement truck ran over a highway construction worker, injuring his leg. The workmen's compensation insurer of the worker's employer paid the man benefits and medical expenses. Not quite a year after the accident, the insurer sued the owner and the driver of the cement truck, as well as the owner's insurer, for indemnity. The suit alleged negligence on the part of the driver of the cement truck.

Shortly after the insurance company filed suit, but more than one year after the accident, the injured worker filed a petition to intervene that adopted the allegations of the insurer's complaint. The trial court dismissed the intervention on the grounds of prescription, and the court of appeal affirmed. The supreme court reversed. Quoting an earlier case, the court repeated:

A cause of action is an act on the part of a defendant which gives rise to a plaintiff's cause of complaint; "the existence of those facts which give a party a right to judicial interference in his behalf"; "the situation or state of facts which entitles a party to sustain an action".

"When used with reference to the pleadings by which the cause of action is alleged, the phrase signifies the facts upon which the plaintiff's right to sue is based, and upon which the defendants [sic] duty has arisen, coupled with the facts which constitute the latter's wrong." [citation omitted]

175 So.2d at 266 *quoting Hope v. Madison*, 192 La. 593, 188 So. 711 (1939).

Applying the definition and other similar cases, the court held that the statute interrupted prescription. The court relied heavily on the provisions of the Louisiana Workmen's Compensation Act that allow an injured workman's employer who has paid benefits (or its subrogated compensation carrier) to sue the alleged tortfeasor for damages on the basis of the worker's right to recover. Accordingly, the court cited an earlier decision holding that the workmen's compensation statutes when read together recognize " 'but one cause of action . . for the recovery of damages resulting from a single tort.' " *Id.* at 267 *quoting Marquette Casualty Co. v. Brown*, 235 La. 245, 103 So.2d 269 (1958).

The important factors to note from *National Surety* are that the two claims involved the same tortfeasor, the same injured party, the same allegations of negligence, the same incident, and the same damages. The only difference between the two claims was that two parties were entitled to recover: the employee and the workmen's compensation carrier who was subrogated, in effect, to the *employee's recovery* to the extent of benefits paid.

Louisiana state and federal courts in the intervening years have struggled with section 9:5801 and its meaning after *National Surety* in numerous contexts.[2] In each case

2. The development of cases includes: *Carona v. Radwin*, 195 So.2d 465 (La. 4th Cir.Ct.App.), *writs denied*, 250 La. 639, 197 So.2d 897 (1967) (auto accident/third party claim); *Klotz v. Nola Cabs, Inc.*, 209 So.2d 158 (La. 4th Cir.Ct. App.1968) (auto accident/personal and property damage); *American Security Insurance Co. v. Insurance Co. of North America*, 220 So.2d 163 (La. 4th Cir.Ct.App.1969), *overruled in part*, 276 So.2d 262, 266 n. 6 (La.1973) (auto accident/personal and property damage); *Nini v. Sanford Brothers, Inc.*, 276 So.2d 262 (La. 1973) (work. comp./wife substituted for deceased husband); *Trahan v. Liberty Mutual Insurance Co.*, 314 So.2d 350 (La.1975) (mine cavein/allegations made against different defendants); *Louviere v. Shell Oil Co.*, 509 F.2d 278 (5th Cir. 1975) (LHWA/employee and comp. carrier); *Allstate Insurance Co. v. Louisiana Gas Service Co.*, 344 So.2d 386 (La. 4th

that a court held the cause of action was the same, the only difference between the causes of action (or suits) was the party entitled to recover the damages: the party actually suffering the injury and a subrogated party for benefits already paid to the actually-injured party,[3] or, in an extension of *National Surety*, the party actually suffering the injury and a substituted party claiming on behalf of the actually-injured party's estate after his/her death.[4]  In each case that a court held the statute of limitations was a bar because the cause of action was not the same, the basic facts giving rise to the two causes of action (or suits) were the same but something was different besides the party entitled to recover the damages.[5]  In some cases, the courts allowed certain claims in the second suit, but held other claims were not saved by section 9:5801.[6]

The line of cases culminated, for my purposes, in *Brown & Root v. Missouri Pacific Railroad Co.*, 381 So.2d 1255 (La. 4th Cir.Ct. App.), *writs denied*, 385 So.2d 794 (La.1980). In that case, some rail cars damaged equipment owned by Brown & Root and facilities owned by the Monsanto company.  The date of the accident was April 5, 1976. Brown & Root filed suit against Missouri Pacific for damages on March 31, 1977. The railroad reconvened against Brown & Root for its own damages and filed a third party complaint against Monsanto both for its damages and for indemnity or contribution for Brown & Root's damages on May 23, 1977.  Over a year later, on June 16, 1978, Monsanto filed an intervention or reconventional demand against Missouri Pacific attempting to recover for the damage to its facilities.  The trial court held the last demand prescribed.

The court of appeal affirmed.  It held that the original petition by Brown & Root did not interrupt prescription for Monsanto's claim that was based on a different cause of action.  The court noted that damage to Monsanto's facilities was an essential element of Monsanto's cause of action that was not an element of Brown & Root's cause of action.  Judge (now Justice) Lemmon concurred and, reasoning on the basis of a notice approach, remarked that Brown & Root's petition did not fully apprise the railroad of a claim to enforce the railroad's liability for damages caused to Monsanto. 381 So.2d at 1257 (Lemmon, J., concurring).

The intervention in the instant case is similar to Monsanto's claim for damages, although intervenor argues that it was the cross-claim for indemnity that interrupted the statute rather than the original wrongful death suits.  Damage in the form of business loss is an element of intervenor's cause of action that was not an essential element of its insured's claim for indemnity against movants for wrongful death damages.  Using the notice approach, the pipe-

---

Cir.Ct.App.1977), *aff'd per curiam*, 354 So.2d 503 (La.1978) (fire loss/insurer and insured/amended damages); *Liberty Mutual Insurance Co. v. Brawner*, 353 So.2d 487 (La. 3d Cir.Ct.App.1977) (auto accident/owner and driver/personal and property damage); *Hearn v. Red Ball Motor Freight, Inc.*, 437 F.Supp. 718 (W.D.La.1977) (auto accident/work. comp. and property damage); *Allstate Insurance Co. v. Theriot*, 376 So.2d 950 (La.1979) (work. comp./aggravation of work-related injury/allegation dismissed); *Guidry v. Theriot*, 377 So. 2d 319 (La.1979) (medical malpractice/wrongful death and survival actions).

**3.**  See *Klotz, Carona, Louviere, Louisiana Gas, Hearn*, and *Allstate v. Theriot, supra* note 2.

**4.**  See *Nini* and *Guidry, supra* note 2.

**5.**  Differences (see case citations *supra* note 2):

Type of damage: *Klotz* (personal/property); *Liberty Mutual* (personal/property); *Hearn* (personal/property); *Guidry* (pain and suffering, medical expenses/loss of affection, loss of support, grief and suffering). *Contra, Northland Insurance Co. v. Kajan Specialty Co.*, 277 So.2d 518 (La. 1st Cir.Ct.App.), *writs denied*, 281 So.2d 744 (La.1973) (personal and property damage the same cause of action).

Tortfeasor: *Trahan; see Baker v. Payne & Keller of Louisiana, Inc.*, 381 So.2d 859 (La. 1st Cir.Ct.App.1980).

Although insurance company same, the injured party was different: *Klotz, Liberty Mutual, Hearn*, and *Guidry* (not really an insurance company case, the heirs to the survival action were also the wrongful death claimants).

**6.**  See *Klotz, Hearn*, and *Guidry, supra* note 2.

line owner's cross-claim to be protected against having to pay for injuries to the workmen's families did not apprise the movants of a claim to enforce their liability for damages caused directly to the pipeline owner. Thus, the intervention for business interruption loss is based on a different cause of action than the cross-claim, and section 9:5801 does not save it.

### B. If prescription was interrupted, was the intervention timely?

■ Once prescription is "interrupted", liberative prescription is generally not extinguished for all time; a new statutory period begins to run. If the prescriptive period is one year from the date of the incident, for example, and it is interrupted after two months have run, the statutory bar will go into effect fourteen months after the date of the incident.[7] See Spring v. Barr, 9 La.App. 732, 120 So. 256 (1st Cir.Ct.App.1929). The quirk about section 9:5801 is that the cases seem to assume that prescription is extinguished when suit is filed. In Louviere v. Shell Oil Co., 509 F.2d 278 (5th Cir. 1975), for example, the accident occurred May 6, 1970. The LHWA carrier filed suit May 5, 1971, one day before the original period of prescription would have run. The employee filed his later suit in February of 1973, long after any new statutory period that commenced when the insurance company filed suit would have run.[8] Yet, the Fifth Circuit reversed the trial court's dismissal on the ground of prescription and remanded for trial on the merits. Of course, the courts also may have assumed that prescription is suspended during the pendency of the first-filed suit. Cf. Spring, 9 La.App. 732, 120 So. at 258 (interruption by judicial demand, suspension during pendency of suit).

Either interpretation is questionable in light of Guidry v. Theriot, 377 So.2d 319 (La.1979). In Guidry, a husband and wife sued the wife's treating physician for medical malpractice in 1973. Mrs. Guidry died in July of 1974. More than four years later, Mr. Guidry filed supplemental petitions substituting himself and his children as party plaintiffs in the pending action as a survival action. The new petitions also asserted wrongful death claims on behalf of himself and his children. The trial court dismissed both of the children's causes of action, and the court of appeal affirmed as to the wrongful death claim. The children on appeal contended that the survival action interrupted prescription to allow their wrongful death claim to be filed, basing their contention on Allstate v. Theriot, 376 So.2d 950 (La.1979). The Louisiana Supreme Court stated:

Assuming, arguendo, the principles of Allstate v. Theriot, above, are applicable herein, it would make no difference in the determination of this matter. Allstate v. Theriot, above, is factually distinguishable in one crucial aspect. In Allstate, prescription was found to have been interrupted and the intervention was filed within a year of the interruption. In this instance, assuming, prescription was interrupted by the suit filed on February 20, 1974, the present beneficiaries did not bring their action until March, 1978, long after the interrupted period had expired.

377 So.2d at 328.

Guidry thus seems to stand for the proposition that the interruption statute acts, if at all, only momentarily. Once suit is filed, the prescriptive period begins to run anew. In the present case, the cross-claim for indemnity, even if it did interrupt prescription, was filed in September of 1976 (the accident occurred in September of 1975).

---

7. "Interruption" is different from "suspension". If prescription is suspended, when the time begins running again the remaining period is what was left at the time of the suspension.

    Example: One year statute. Suspended after two months had elapsed. One month passes, and statute begins to run again. There are only 10 months left to run.

See Stewart v. Kahn, 78 U.S. (11 Wall.) 493, 20 L.Ed. 176 (1871). The case cited in the text illustrates a combination of interruption and suspension.

8. The prescriptive period should have elapsed once and for all on May 5, 1971.

Prescription would then have started running again, to expire in September of 1977. Intervenor did not file the claim for business interruption loss until June of 1978, long after the period as interrupted would have expired.

For all of the above reasons, any tort claim for losses sustained by the pipeline owner when its business was interrupted by the explosion has prescribed.

### C. *A contract cause of action?*

Intervenor argues that its claim for business interruption loss arises in part out of the pipeline owner's contracts with movants to install the valve in the pipeline. It argues that it has viable causes of action based on breach of contract and breach of warranty. While the complaint in intervention sounds in tort, using the language of "negligence" and "proximate cause", it also refers to the cross-claim for indemnity that contains allegations phrased in the language of contract or quasi-contract.

The prescriptive period in Louisiana for contract causes of action is 10 years. La. Civ.Code Ann. art. 3544 (West 1953). Even if I were to dismiss this suit as based entirely on tort, contractual causes of action arising out of the accident would not prescribe until 1985. Rather than forcing intervenor to refile suit, I will give it a chance to amend its complaint to set forth a. valid claim for business interruption loss based on contract.[9]

---

9. Movants have not addressed the issue whether intervenor can recover for business interruption losses even assuming the contracts are otherwise valid. I therefore withhold a ruling on that issue.