Lamar M. RICHARDSON, Jr., Plaintiff-Appellant,

v.

PENNZOIL PRODUCING COMPANY, Defendant–Appellee.

No. 89–3646

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 20, 1990.

Rehearing Denied April 10, 1990.

Lamar M. Richardson, Jr., Mandeville, La., pro se.

Julian R. Murray, Jr., Murray, Braden, Gonzalez & Richardson, Mandeville, La., for plaintiff-appellant.

Douglas L. Grundmeyer, James A. Barton, III, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., Frank Douglass, Austin, Tex., for defendant-appellee.

Before GEE, DAVIS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Lamar Richardson, Jr. appeals from an order of the district court granting summary judgment in favor of defendant Pennzoil Producing Company (Pennzoil) on grounds of prescription. We affirm.

This diversity suit was prosecuted in Louisiana and is governed by its law. Richardson owned a royalty interest in certain Texas land belonging to the Vela family. Pennzoil held leases on this and surrounding land, and in 1977, Pennzoil formed several pooling units as was its right under the lease. Soon after, Pennzoil sent Richardson division orders reflecting his royalty interest in the pooled units. Richardson could ratify the unit designation by signing the division orders and returning them to Pennzoil.

For over four months, Richardson, who at the time was a five-year lawyer, considered the unit designations by looking at plats, making calculations, and discussing the situation with other royalty owners. Finally, on May 22, 1978, Richardson signed and returned the orders to Pennzoil, thereby ratifying the pooling arrangement. For over ten years, Richardson received and cashed royalty checks from Pennzoil pursuant to these division orders.

However, unlike Richardson, the Velas (the landowners) never signed their division orders; instead, they filed suit against Pennzoil on June 20, 1979, to cancel the pooling arrangement and recover damages. This case was settled nine years later.

Richardson filed suit against Pennzoil on October 28, 1988, but the district court dismissed the action as having prescribed under the ten-year period provided in LA. CIV. CODE ANN. art. 3499 (West Supp. 1989). Richardson now brings this appeal, alleging that the district court should not have granted summary judgment to Pennzoil because the 1979 action the Velas instituted against Pennzoil interrupted prescrip-

tion in his favor. Alternatively, Richardson contends that prescription was suspended by the doctrine of *contra non valentem*.

■ Appellate court review of summary judgment cases is limited in two ways: (1) the courts may only consider the pleadings, affidavits, etc. that were before the trial court, *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988); and (2) the court may only determine whether a genuine issue exists and whether the law was applied correctly, *Central Oil & Supply Corp. v. U.S.*, 557 F.2d 511 (5th Cir. 1977)—it cannot decide disputed issues of material fact. *Honore v. Douglas*, 833 F.2d 565 (5th Cir.1987). 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2716 (1983).

In the instant case, the parties did not disagree over the material facts. The only genuinely disputed issues are the legal questions on which Richardson hinges this appeal.

■ The district court found that Richardson's claim had prescribed on the face of the complaint and that he was unable to produce evidence that would allow a jury to find in his favor on the prescription issue. Richardson argues, however, that his suit against Pennzoil has not prescribed, because the Velas' 1979 suit against the defendant interrupted the running of the prescription period. Therefore, Richardson's argument goes, his suit was timely filed and summary judgment against him was improper.

Richardson relies primarily upon *Allstate Insurance Co. v. Theriot*, 376 So.2d 950 (La.1979). In that case, the court found that a timely petition filed against a defendant by a workmen's compensation insurer interrupted prescription in favor of the late-filing intervenor, who was also the insured. The court held: "[I]f the subsequent claimant is a different person than the original plaintiff, then to interrupt prescription the first suit must not only be based upon the same factual occurrence ... *the subsequent claimant must also be closely connected in relationship and identity of interest* with the original plaintiff." *Id.* at 954 (emphasis added). The court also stated that the primary purpose of prescription statutes "is only to afford a defendant security of mind and affairs if no claim is made timely, and to protect him from stale claims and from the loss or non-preservation of relevant proof." *Id.*

The *Allstate* court held that the intervenor/insured was closely connected in both relationship and interest to Allstate, the original plaintiff, and thus found that prescription had been interrupted. *Id.*

Unfortunately, *Allstate* did not specify what constitutes a "closely-connected relationship" or "identity of interest." The court took up the matter again in *Guidry v. Theriot*, 377 So.2d 319 (La.1979). There the issue discussed was whether a wrongful death action by the deceased's children had prescribed since it was filed after the period had run, or whether prescription was interrupted due to the continued existence of their survival action. The *Guidry* court decided that these two actions constituted entirely separate and distinct causes of action, citing *Allstate*, and found that the children's wrongful death claim was prescribed. *Guidry*, 377 So.2d at 327.

In *Louviere v. Shell Oil Co.*, 440 So.2d 93 (La.1983), a suit arising out of an offshore drilling platform accident, the Louisiana Supreme Court extrapolated on its holding in *Guidry*. In *Louviere*, a worker's compensation carrier sued Shell Oil, the platform owner, to recoup benefits paid to certain injured employees. The employees then filed actions against Shell for their personal injuries. The court held:

> [W]hen several parties share a single cause of action (as through partial subrogation), suit by one interrupts prescription as to all. However, when a suit by a second party states a different cause of action than the first party, although each cause of action is based in part on common facts, the first suit does not interrupt prescription as to the subsequent cause of action.

*Id.* at 96.

The question thus becomes whether the suits filed against Pennzoil by the Velas in

1979 and by Richardson in 1988 arose from a "single cause of action."

In *Brown & Root v. Missouri Pacific Railroad Co.*, 381 So.2d 1255 (La.Ct.App. 1980), free-rolling cars owned by the defendant damaged Brown & Root equipment and Monsanto facilities. Brown & Root filed suit in a timely manner, but Monsanto filed after the prescription period had run. Monsanto argued that Brown & Root's original petition interrupted prescription in its favor, but the court disagreed, holding "Brown & Root's cause of action [was] not Monsanto's cause of action: the damage to Monsanto's facilities is an essential element of Monsanto's cause of action but is not an element of Brown & Root's cause of action." *Id.* at 1256.

The court also found no interruption of prescription in *Hunter v. Johnson*, 434 So.2d 646 (La.Ct.App.1983). There, a fire destroyed two adjoining houses. The tenants of one house, the Hunters, sued the city. The other homeowner, Mr. Johnson, filed against the city after the prescription period, claiming that the first suit suspended prescription of his claim. Relying on *Allstate*, the court held that Johnson's claims were

> not closely connected in relationship and identity of interest with the original plaintiff so as to serve as adequate notice to the defendants. Notice to the defendants that there were injuries to the Hunters and what the extent of those injuries might be is not notice that there were necessarily injuries to the Johnsons or what the extent of those injuries might be. *The relationship of lessor and lessee that existed between the Hunters and the Johnsons is in no way pertinent to their claims against the defendants for damages sustained separately as the result of the same tort.*

*Id.* at 648 (emphasis added).

In the instant case, it cannot be said that, because Pennzoil received knowledge in 1979 that the Velas considered themselves to have been treated unfairly by the pooling arrangement that this was also notice of dissatisfaction on Richardson's part.

Upon receipt of the division orders, Richardson carefully reflected upon them. He executed the division orders, and collected royalty payments based on this arrangement for over ten years. Pennzoil cannot, therefore, be said to have been fairly warned that Richardson disliked the pooling units' configuration. To hold otherwise would circumvent the fundamental purpose of prescription statutes—*i.e.*, "to afford a defendant security of mind and affairs if no claim is made timely, and to protect him from state claims." *Allstate*, 376 So.2d at 954.

In light of the foregoing, we adopt the district court's holding that the Velas' claim did not interrupt prescription in favor of Richardson.

Richardson alternatively argues that the doctrine of *contra non valentum*, providing that prescription does not run against one who could not bring his suit, prevents prescription from barring his claim. This claim is without merit.

Under Louisiana law, *contra non valentum* prevents the running of liberative prescription in four factual situations: (1) where a legal cause prevented the courts from taking cognizance of the claim; (2) where some condition prevented the plaintiff from suing; (3) when a debtor does something to prevent a creditor from suing; or (4) where the cause of action is not known or reasonably knowable by the plaintiff. *Matthews v. Sun Exploration & Production Co.*, 521 So.2d 1192 (La.Ct. App.1988).

Like the district court, we cannot see how Richardson's situation fits into any of these categories. Nothing prevented Richardson from either: (1) not signing the division orders in the first place if, after his careful deliberating, he felt them to be unfair; or (2) from proclaiming his dissatisfaction with the arrangement sometime during the *ten-year* prescription period. Hence, no genuine issue of material fact existed as to this matter, either.

For these reasons, the summary judgment in Pennzoil's favor is AFFIRMED.