hWICKER, Judge.
This appeal arises from a petition for damages resulting from negligence and medical malpractice filed by Robert B. Tassin, Jr. (Tassin) as the legitimate son of the decedent, Robert B. Tassin, Sr. Named as defendants were: City of Westwego, West Jefferson Hospital, Westside Orthopaedic Clinic, Dr. Robert E. Fleming, Jr., and various insurance companies. Tassin alleged his father was involved in a motor vehicle accident on June 17, 1991 while driving a vehicle owned by the City of Westwego. He further alleged his father suffered injuries which were treated at West Jefferson Hospital by Dr. Fleming, who practices at Westside Orthopedic Clinic. Tassin alleges Dr. Fleming performed surgery on his father’s left arm on the date of the accident. He further alleges Dr. Fleming improperly set a plate which caused the radius of the bone to be one centimeter short. The shortness allegedly subsequently resulted in a bone marrow disease called myelodysplasia. He also alleges Dr. Fleming’s use of x-rays to the arm caused the disease to spread throughout his body. He alleges he did not discover the malpractice until the medical records were made available to him around April 16, 1994 and February 15,1994. Tassin filed his petition for damages in the district court on August 15, 1994; he filed it with the commissioner of insurance on August 12,1994.
Fleming and Westside Orthopaedic Clinic filed the following motion, “Motion for |2Summary Judgment and For Judgment on the Pleadings and Exception of Prescription.” On March 23, 1995, the trial judge dismissed with prejudice the City of Westwe-go pursuant to an agreement between the parties. On July 14, 1995, the trial judge ruled on the exception of prescription which was submitted on memos, and argued by the parties. He granted the exception as to Dr. Fleming and Westside Orthopaedic Clinic.[1] The only remaining defendant in this action is West Jefferson Hospital, referred to by this defendant as “Hospital Service District No. 1 of Jefferson Parish, d/b/a West Jefferson Medical Center.” This party did not file an exception of prescription, nor was it present at the hearing on these motions.
Tassin now appeals specifying the following specifications of error:
1. The district court erred in granting defendants’ exception of prescription under the provisions of La.R.S. 9:5628;
2. The district court erred in granting the defendants’ motion for summary judgment for prescription because of the third and fourth categories of the doctrine of contra non valentem;
3. The district court erred in granting the defendants’ motion for summary judgment for prescription when the defendant concealed his wrong doing, which suspended prescription under the doctrine of contra non valentem, and
4. The district court erred in granting the defendant’s motion for summary judgment for prescription because of the breach of duty violated by Dr. Fleming.
*1249 Dr. Fleming and Westside Orthopaedic Clinic have answered the appeal as follows:
In the event that the judgment herein in favor of defendants is reversed or modified on appeal, appellees herein desire to answer the appeal pursuant to La.Code CivJP. art. 2133 by stating that in that event, and only in the event the judgment of the trial court is reversed or modified, that the appellate court has the authority to grant on its own initiative the Motion for Summary Judgment and/or the Motion for Judgment on the Pleadings since appel-lees herein assert that those alternative motions were also with merit and should have been granted at the trial court level as well.
We note at the outset that the judgment makes no mention of the motion for summary judgment or judgment on the pleadings. Instead, it refers only to the exception of prescription. Although all of the motions were before the trial judge, he only ruled on the exception of prescription. No ruling on the other matters was made by the trial judge.
laTassin filed this petition for damages on August 15, 1994.[2] The act of negligence complained of occurred June 17, 1991. On this date, the date of the accident, the decedent had fractured his arm. Dr. Fleming performed surgery at West Jefferson Hospital by placing a pin in the arm. Tassin admits in pleadings that his father did not die as a result of the alleged negligence, but rather died of another subsequent accident on August 21,1993.
PRESCRIPTIVE PERIOD
This action was filed less than one year after the death of Tassin’s father, but more than three years from the date of the alleged negligence. Tassin argues the proper provision setting forth the prescriptive period in this case is La.Civ.Code art. 2315[3] and not the malpractice provision contained in La.R.S. 9:5628.[4] He asserts that 2315 allows him to file this action one year from the death of his father. However, this action is clearly a survival action and not a wrongful death action. Tassin is not claiming damages for his father’s death Uarising from malpractice. He is only claiming damages for his father’s injury as a result of malpractice.
In Taylor v. Giddens, 618 So.2d 834 (La. 1993) the Supreme Court distinguished a survival action from a wrongful death action. It *1250 also addressed the issue of whether these actions, which were both based on medical malpractice, were controlled by La.R.S. 9:5628. The court held at 836:
LSA-R.S. 9:5628 provides the prescriptive period for survival actions but does not provide the prescriptive period for wrongful death actions ... The commencement and running of the prescriptive period for the wrongful death action is controlled by the one year liberative period applicable to delictual actions, LSA-C.C. art. 3492, and the action is available to the certain beneficiaries named in LSA-C.C. art. 2315.2 (formerly named in LSA-C.C. art. 2315).
The Taylor court distinguished the two actions at 840 as follows:
Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. Guidry v. Theriot, 377 So.2d 319 (La.1979). Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses. Id. The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim’s death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. Id. It is in the nature of a succession right. Comment, Wrongful Death: Prescription? Peremption? Confusion! 39 La.L.Rev. 1239, 1249 (1979). On the other hand, the wrongful death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim’s death and thereafter. Guidry v. Theriot, supra. Wrongful death damages compensate beneficiaries for their own injuries. 39 La. L.Rev. 1239, supra at 1249.
The rule adopted by Taylor relative to the prescriptive period for survival actions based on medical malpractice applies here. Therefore, Tassin’s survival action filed more than three years after the tortious act has prescribed on its face. Thus, the burden shifted to Tassin to prove the prescriptive period has been suspended or interrupted. Castaneda v. Louisiana Ins. Guar. Ass’n, 95-29 (La. App. 5th Cir. 5/30/95), 657 So.2d 338, 339.
Tassin relies on the doctrine of contra non valentem for the proposition that prescription was suspended or interrupted. In Rajnowski v. St. Patrick’s Hosp., 564 So.2d 671, 674 (La.1990) the court explained [quoting Whitnell v. Menville, 540 So.2d 304, 308 (La.1989)]:
The doctrine applies in four general situations:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff’s action;
(2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;
(4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
Tassin’s argument prescription should run from the date of discovery fails since “the discovery rule is expressly made inapplicable after three years from the act, omission or neglect.” Crier v. Whitecloud, 496 So.2d 305, 307 (La.1986). Accord Taylor, supra.
Tassin also makes the following arguments:
1. West Jefferson Hospital intentionally withheld the documents he requested, thereby prohibiting him from obtaining the necessary information until six months and six days after his initial request. He asserts he did not obtain the necessary information until March 15,1994.
2. Prescription should have been suspended for one year, eight months, and eight days since Dr. Fleming concealed his malpractice. Tassin argues his father was lulled into believing there were no problems by Dr. Fleming until March 10, 1993. He argues this is an attempt to conceal his wrong doing. He asserts Dr. Fleming knew of the breach of his duty through the *1251 x-rays of July 2, 1991 and concealed this information until March 10,1993.
WEST JEFFERSON HOSPITAL
Tassin argues West Jefferson Hospital refused to provide him with his father’s medical records. He contends the hospital intentionally withheld the information and forced him to seek a writ of mandamus in order to obtain them. However, there is no evidence in the record that Dr. Fleming was an employee of the hospital or that Dr. Fleming himself intentionally refused to release medical records.
Tassin argues in brief that his father withheld information from him because he (Tas-sin) was on death row and his father did not wish to cause him any anguish. Tassin | (¡asserts he first knew of the alleged malpractice on April 22, 1994 when he received records from the City of Westwego which contained Dr. Fleming’s records.
Even assuming the alleged intentional refusal of West Jefferson Hospital could be imputed to Dr. Fleming, the record discloses that West Jefferson Hospital responded to Tassin’s initial request of September 2, 1993 by informing him it needed his birth certificate and a copy of the death certificate before it could release the records. It also noted his signature was not that of the next of kin as shown on their records. Tassin forwarded the required documentation on October 6, 1993. Tassin received a free abstract of the records along with a request for a fee for additional documents on October 14, 1993. Tassin sent two more letters seeking free copies as an indigent on October 27, 1993 and November 28,1993.
When Tassin got no response from these two letters he filed a petition for a writ of mandamus on March 16, 1994. This was denied. However, on March 15,1994 a letter was sent to Tassin from a manager in charge of the records referring to his letter in which he enclosed the two letters not responded to and the petition. This letter stated his letters dated October 27, 1993 and November 28, 1993 were never received and that had they been his request could have been expedited. The documents were sent that date free of charge.
There is no showing West Jefferson Hospital intentionally withheld the information requested.
DR. FLEMING
The record does not show that Dr. Fleming intentionally concealed information from Tassin’s father.
Tassin argues that on July 2, 1991 Dr. Fleming should have been aware from an x-ray that the pin which he placed in his father’s arm was too small. Tassin states that Dr. Fleming chose to conceal this information until March 10, 1993, at which time his father had obtained a second opinion. In addition, Tassin argues that despite his father’s having constructive knowledge of the malpractice Dr. Fleming lulled him into a false sense of believing the alignment was excellent until March 10,1993.
The record reveals that Dr. Fleming performed two surgeries on Tassin’s father. Dr. Fleming’s operative note on the first operation dated June 17, 1991 stated he did well 17postoperatively. On May 15, 1992, Dr. Fleming performed a second surgery to remove the plate and screws from the first surgery. The operative report states that “[t]he fracture was noted to be well healed.”
On August 24, 1992 Dr. Harold M. Stokes wrote a letter to the Office of Risk Management. He stated Tassin’s father continued to complain of:
constant pain in his left elbow with diminished strength and burning sensations in his left wrist. He experiences numbness in the thumb, index and long fingers, particularly at night.
Dr. Stokes noted that x-rays “of the left wrist reveal[ed] a healed fracture of the distal radius.” He noted “x-rays of the left elbow revealed no abnormality.” Dr. Stokes stated:
His elbow pain may be related to his ra-dioulnar length discrepancy [emphasis added].
Dr. Stokes made no definite conclusion as to the cause of Tassin’s father’s pain and asked to review his nerve conduction study. Dr. Fleming stated his awareness of Tassin’s *1252 father’s continued discomfort in the wrist and forearm in a letter written August 19,1993 to the City of Westwego. On November 13, 1992 Dr. Fleming wrote the City of Westwe-go stating that he recommended an arterial doppler study of Tassin’s father’s left upper extremity to determine whether he had arterial circulatory damage as a result of the injury or reflex sympathetic problems. Thus, there is no indication that either Dr. Stokes or Dr. Fleming knew the cause for Tassin’s father’s continued pain.
Letters written by Dr. Fleming to the City of Westwego on July 2, 1991 and July 18, 1991 refer to proper position and alignment of the fracture. The July 1991 letter refers to x-rays which show “the fracture to be maintained in excellent position and alignment.”
It was not until March 15, 1993 that Dr. Fleming’s follow-up x-rays that date revealed and discrepancy in the radius. On that date Dr. Fleming wrote the City of Westwego stating:
follow up films on this date [showed] a difference of one centimeter in the length of the radius [emphasis added].
Dr. Fleming recommended surgery to lengthen the radius. Dr. Fleming made no mention as to the cause of this development. On May 27, 1993, Dr. Fleming notes Tassin’s father has been diagnosed as having leukemia.
Dr. Fleming’s conduct as evidenced in the record does not indicate concealment, | gmisrepresentation, fraud or ill practices sufficient to trigger applying the doctrine of contra non valentem. There is nothing in the record to indicate Dr. Fleming’s conduct prevented the alleged victim from discovery of any alleged wrongdoing or from timely filing suit. See, e.g. Rajnowski, supra. Accordingly, the trial judge correctly concluded Tassin’s suit which was filed more than three years after the date of the alleged negligent act has prescribed and there was no interruption of prescription. This judgment is affirmed.
AFFIRMED.

. Although the judgment does not specifically mention Tassin's suit against Dr. Fleming and Westside Orthopaedic Clinic is dismissed; nevertheless, implicit in the sustaining of the exception of prescription is the conclusion that the action is over. Ubosi v. Sowela Technical Institute, 584 So.2d 340 (La.App. 3rd Cir.1991), writ denied, 589 So.2d 1075 (La.1991); La.Code Civ.P. art. 934.

. The record indicates that on September 2, 1994 West Jefferson Hospital filed an exception of prematurity on the basis it was a qualified health care provider and a claim against it must first be presented to the medical review panel. Tassin filed a motion to stay the proceedings in order to allow him to determine whether the defendants were qualified health care providers. The proceedings were stayed September 28, 1994. Thereafter, Dr. Fleming and Westside Ortho-paedic Clinic filed a motion to vacate the stay and waived the exception of prematurity in order that the court consider its pending motions for summary judgment, judgment on the pleadings, and prescription. All motions were heard on the same date. The trial judge rendered judgment on the exception of prescription, thereby lifting the stay.

. La.Civ.Code art. 2315.2 makes a wrongful death action available to certain beneficiaries. It provides:
A.If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:
(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children ...
B. The right of action granted by this Article prescribes one year from the death of the deceased.
C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article ...

.La.R.S. 9:5628 provides in pertinent part:
A. No action for damages for injury or death against any physician, chiropractor, dentist, psychologist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect ...