447 So.2d 587 (1984)
Alton J. KNIGHT, Individually and as Administrator of the Estate of the Minor, Amy D. Knight, Plaintiff-Appellant,
v.
Laura G. SAMUEL, et al., Defendants-Appellees.
No. 83-473.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1984.
Writ Denied April 23, 1984.
*588 Smith, Ford & Clark, Chris Smith, III, Leesville, for plaintiff-appellant.
Gachassin & Capretz, Susan Severance, Lafayette, and Laura G. Samuels, in pro. per., for defendant-appellee.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
GUIDRY, Judge.
This suit was consolidated for appeal with the case of Knight v. St. Paul Fire and Marine Insurance Company, 447 So.2d 594 (La.App. 3rd Cir.1984). The two *589 suits arise out of a single automobile accident. The trial court rendered judgment in both suits on April 25, 1983. Since the consolidated suits arise as a result of the same factual circumstances, we will consider and discuss the issues presented in both suits in this opinion but we will render a separate opinion in the case which bears our docket number 83-474.
The automobile accident in question occurred on the afternoon of March 7, 1980, on Louisiana Highway 28, a two-lane highway in Vernon Parish. Shirley H. Knight, driving a 1976 Chevrolet, was proceeding in a westerly direction on Highway 28. Her daughter, Amy D. Knight, was a passenger in the vehicle. Just prior to the accident, a 1965 Rambler, being operated by Laura G. Samuel, was parked on the north, or westbound, shoulder of the highway, some distance ahead of the Knight vehicle. As the Knight vehicle topped the crest of a small hill, the Samuel vehicle suddenly pulled out from the shoulder into the westbound lane of travel. To avoid a collision with the Samuel vehicle, Mrs. Knight swerved her vehicle to the left, crossing the center line and the south, or eastbound, lane of travel, and on to the south shoulder of the highway.
As Mrs. Knight was swerving to avoid colliding with the Samuel vehicle, a line of several cars approached from the opposite direction, travelling eastward. The first of these vehicles, being operated by Suzanne Dubois, swerved to the right, onto the south shoulder of the road. The Knight vehicle and the Dubois vehicle collided head-on on the south shoulder of the road. As a result of the collision, Shirley Knight was killed and Amy Knight was seriously injured.
Alton J. Knight filed the first of these related suits on March 6, 1981. In that suit (number 83-473), he sought to recover on behalf of his daughter, Amy, for the injuries which she suffered in the accident. Made defendants were Laura G. Samuel and St. Paul Fire and Marine Insurance Company, the insurer of the Knight vehicle. The policy issued by St. Paul limited liability for bodily injury to $5,000.00 for any one person and $10,000.00 per accident. The uninsured motorist provisions of the St. Paul policy also provided coverage for bodily injury in the amount of $5,000.00 for any one person and $10,000.00 per accident. The Samuel vehicle was uninsured. In this suit, the plaintiff alleged that the accident resulted from the joint and concurrent negligence of Shirley Knight and Laura Samuel, and sought recovery under both the liability and uninsured motorist provisions of the policy. This suit was tried on September 3, 1982. At the close of evidence, the trial judge indicated that, according to his impression of the testimony, he felt that the accident was caused solely by the negligence of Laura Samuel.
On the same day that the first suit was tried, September 3, 1982, the plaintiff filed the second suit (number 83-474). In the second suit, the plaintiff seeks damages, for himself and on behalf of Amy, for the wrongful death of Shirley Knight. The defendants in the second suit are the same as in the first, Laura Samuel and St. Paul. As against St. Paul, recovery is sought pursuant to the uninsured motorist provisions of the policy issued on the Knight vehicle. In response to the second suit, St. Paul filed an exception of prescription urging that the wrongful death suit was filed more than two years following the accident in question.
On February 3, 1983, the trial court rendered reasons for judgment in both suits. In the suit for Amy's personal injuries (number 83-473), the trial court rendered judgment in favor of the plaintiff, Alton J. Knight, and against the defendants, Laura Samuel and St. Paul, in the sum of $25,000.00. St. Paul's liability was limited to $5,000.00, the policy limits under the uninsured motorist provisions of the policy. Plaintiff's suit against St. Paul seeking recovery under the liability provisions of the policy for the negligence of Shirley was ordered dismissed with prejudice. In the wrongful death action (number 83-474), the trial court sustained the exception of prescription and dismissed the plaintiff's suit *590 against St. Paul. Plaintiff lodged devolutive appeals in both suits.
On appeal, the plaintiff contends that the trial court erred in failing to find negligence on the part of Shirley Knight in number 83-473. Should the judgment in number 83-473 be affirmed, plaintiff argues in the alternative that the trial court erred in sustaining the exception of prescription in number 83-474.

REVIEW OF FACTUAL DETERMINATION
The trial court found that the accident was caused solely by the negligence of Laura Samuel, and that there was no negligence on the part of Shirley Knight. Plaintiff was therefore denied recovery for Amy's injuries under the liability provisions of the policy covering the Knight vehicle. For the reasons which follow, we affirm the judgment of the trial court in this regard.
Several witnesses testified as to how the accident occurred. Thomas G. Allen was driving his car in the eastbound lane of Highway 28 in the line of vehicles following the Dubois vehicle. He stated that the Samuel vehicle, which was parked on the westbound shoulder prior to the accident, pulled out into the westbound traffic lane into the path of the Knight vehicle. He further stated that it was necessary for the Knight vehicle to swerve to avoid hitting the Samuel vehicle. According to Allen, Shirley Knight did everything possible to avoid a collision.
E.L. Harville witnessed the accident from his home approximately one hundred yards from the point of collision. His testimony is in accord with that of Allen. He stated that when the collision occurred, the Samuel vehicle was in the westbound lane of traffic, and that the Knight vehicle would have struck the Samuel vehicle had it not swerved to avoid the collision. Both Allen and Harville testified that the Samuel vehicle darted back onto the shoulder after pulling into the traffic lane.
Laura Samuel testified that she never drove her vehicle into the traffic lane, but rather pulled up to the edge of the pavement before being warned by her daughter of the approaching Knight vehicle. She stated that there was adequate room for Mrs. Knight's vehicle to pass in the westbound lane without crossing the road. Jackie Wesson, the daughter of Laura Samuel and a passenger in the car at the time of the accident, testified that her mother did in fact partially enter the road before being warned that a car was approaching from behind. At that point, she immediately returned to the shoulder of the road.
After hearing the evidence taken at trial, the trial judge concluded that the Samuel vehicle encroached upon the lane of travel occupied by the Knight vehicle necessitating some evasive action on the part of Mrs. Knight. We find no clear error in this factual determination. Furthermore, we agree with the trial judge that the conduct of Mrs. Knight was in no way negligent. The record makes clear that Mrs. Knight was forced to swerve her vehicle in order to avoid a collision with the Samuel vehicle. As she swerved to the left to avoid the collision, she was faced with a line of several cars approaching in the eastbound lane. Faced with this danger, she continued to veer to the left in order to seek safety on the southern, or eastbound, shoulder of the highway. In our view, this may have been the most prudent choice Mrs. Knight could make in her attempt to avoid a collision with another vehicle and injury to herself and Amy. Unfortunately, Dubois also sought safety on the same shoulder, and the collision resulted.
However, assuming, arguendo, that the evasive action taken by Mrs. Knight was not the safest or most prudent maneuver under the circumstances, her conduct was clearly justified in light of the sudden emergency doctrine. As stated in Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972):
"One who suddenly finds himself in a position of imminent peril, without sufficient *591 time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence."
The emergency in the instant case was clearly not brought on by Mrs. Knight, but rather by the negligent conduct of Laura Samuel. Mrs. Knight's attempt to avoid a collision by crossing the highway and driving onto the south shoulder was not negligent, despite the fact that, with the aid of hindsight, one might determine that a safer course of action was available. We find no error in the trial court's finding that Mrs. Knight was free of negligence. For these reasons, we affirm the trial court's judgment in the appeal which bears our docket number 83-473.

EXCEPTION OF PRESCRIPTION
We next turn to the plaintiff's second and alternative assignment of error. He asserts that the trial court erred in sustaining the exception of prescription filed by St. Paul in the wrongful death action, which results in the dismissal of St. Paul from that suit.
The plaintiff's wrongful death claim against St. Paul is grounded in the uninsured motorist provisions of the policy issued on the Knight vehicle. The plaintiff alleges that the tortfeasor, Samuel, was uninsured, and that he is entitled to recover wrongful death damages, on his own behalf and on behalf of his daughter, from St. Paul pursuant to the uninsured motorist provisions of the policy.
LSA-R.S. 9:5629 provides:
"Actions for the recovery of damages sustained in motor vehicle accidents brought pursuant to uninsured motorist provisions in motor vehicle insurance policies are prescribed by two years reckoning from the date of the accident in which the damage was sustained."
The wrongful death action against St. Paul was filed on September 3, 1982, more than two years after the accident in question, which occurred on March 7, 1980. Therefore, absent an interruption or suspension of prescription, the second suit, seeking damages for the wrongful death of Shirley Knight under the uninsured motorists provisions of the St. Paul policy, has prescribed.[1] The plaintiff contends that the filing of the first of these related suits, in which he sought damages for Amy's personal injuries, interrupted prescription of the wrongful death action.
The first suit, seeking damages for Amy's personal injuries, was filed on March 6, 1981. The second suit, seeking damages for the wrongful death of Shirley Knight, was filed on September 3, 1982. The exception of prescription filed by St. Paul in response to the wrongful death action was filed on September 9, 1982. At these relevant times, LSA-R.S. 9:5801 provided in pertinent part:
"All prescriptions affecting the cause of action therein sued upon are interrupted as to all defendants, including minors or interdicts, by the commencement of a civil action in a court of competent jurisdiction and in the proper venue...".[2]
*592 The relevant inquiry in the instant case thus becomes whether the first suit, for Amy's personal injuries, and the second suit, for the wrongful death of Mrs. Knight, state a single cause of action. If the two suits involve a single cause of action, the filing of the first suit interrupts prescription on the second, and the interruption continues through the pendency of the first suit. LSA-R.S. 9:5801; also see Louviere v. Shell Oil Co., 440 So.2d 93 (La.1983); Allstate Ins. Co. v. Theriot, 376 So.2d 950 (La.1979). Conversely, if the two suits involve separate and distinct causes of action, the filing of the first does not interrupt prescription on the second suit. Guidry v. Theriot, 377 So.2d 319 (La.1979).
For the reasons which follow, we hold that the two suits filed by the plaintiff state different causes of action. Accordingly, the filing of the personal injury suit did not interrupt prescription on the wrongful death action, and therefore, the latter suit has prescribed.
In Trahan v. Liberty Mutual Insurance Company, 314 So.2d 350 (La.1975), the Louisiana Supreme Court defined a cause of action as "... an act by a defendant which gives a plaintiff a right to invoke judicial interference on his behalf. A cause of action in tort has no identity independent from the defendant upon whose fault it is based." (emphasis by court, citation omitted). The Trahan court also cited, with apparent approval, the following definition of a cause of action given in Hope v. Madison, 192 La. 593, 188 So. 711 (1939):
"A cause of action is an act on the part of a defendant which gives rise to a plaintiff's cause of complaint; `the existence of those facts which give a party a right to judicial interference in his behalf'; `the situation or state of facts which entitles a party to sustain an action'.
"`When used with reference to the pleadings by which the cause of action is alleged, the phrase signifies the facts upon which the plaintiff's right to sue is based, and upon which the defendant's duty has arisen, coupled with the facts which constitute the latter's wrong.' Quotations from 2 Words & Phrases, First Series, Cause of Action, p. 1017." (Emphasis provided)
The most recent definition given to "cause of action" is found in Louviere v. Shell Oil Co., supra, where the Supreme Court stated:
"A cause of action consists of the material facts which form the basis of the right claimed by the party bringing the action." 440 So.2d at page 95.
Although the two suits filed by the plaintiff herein involve the same defendants and arise out of the same accident, an examination of the material facts which form the basis of the plaintiff's right in each suit makes it clear that a separate and distinct cause of action is asserted in each suit.
In the first suit, wherein the plaintiff seeks damages for Amy's personal injuries, the plaintiff asserts that the accident occurred as a result of joint and concurrent negligence on the parts of Mrs. Samuel and Mrs. Knight. A finding of negligence on the part of Mrs. Knight was necessary to the plaintiff's recovery under the liability provisions of the policy issued by St. Paul. The petition in the first suit failed to make allegations sufficient to state a cause of action for the wrongful death of Mrs. Knight. An examination of the petition reveals that it did not even state that Mrs. Knight died in the accident. The petition not only failed to state a cause of action for the wrongful death of Mrs. Knight, but more importantly, it alleged material facts which would preclude the recovery of damages for the wrongful death of Mrs. Knight, since at the time of the accident, contributory negligence on the part of a decedent precluded the recovery of wrongful *593 death damages by his beneficiaries.[3] Thus, in the instant case, the causes of action asserted in each suit are not only separate, but are, according to their factual allegations, mutually exclusive of one another.
The plaintiff asserts that, because the two claims arise out of a single accident, the causes of action are the same. We disagree. While the foregoing definitions of a cause of action focus on the acts of the defendant, they should not be understood to mean that all claims arising from a single tort constitute a single cause of action. In Guidry v. Theriot, supra, the Supreme Court considered the question of whether a timely filed survival action interrupted prescription on a wrongful death claim. As in the instant case, the issue turned on whether there was a single cause of action, in which case the filing of the survival action would have interrupted prescription on the wrongful death claim. Both claims arose out of the same conduct by the defendant, alleged medical malpractice. The Supreme Court stated:
"We conclude that each of these actions is a separate and distinct cause of action. Although both actions arise from a common tort they are, nevertheless, separate and distinct because each arises at a different time. The survival actions comes into existence simultaneously with the commission of the tort and is transmitted to the beneficiaries upon the victim's death. The wrongful death action does not arise until the victim dies. Each right addresses itself to the recovery of damages for totally different injuries and losses. The survival action permits recovery only of the damages suffered by the victim from the time of injury to the moment of death. The wrongful death action is intended to compensate the beneficiaries for compensable injuries suffered from the moment of death and thereafter.
If the actions are deemed but one cause of action giving rise to recovery by different individuals it would follow that in the event the victim compromised his claim and then died the wrongful death action would be lost to the beneficiary. We do not believe the legislature intended such a result.
To put the issue at rest, we conclude and hold that the rights arising in instances of this nature are not a single right of action but two separate and distinct actions."
As in Guidry, the actions in the instant case arise at different times. The action for Amy's personal injuries arose at the time the accident occurred. The wrongful death action arose upon Mrs. Knight's death. This distinction exists despite the fact that, in this case, the two triggering events happen to have occurred at nearly the same time.
The two actions not only arise at different times, but exist to compensate the plaintiff for different injuries. The personal injury suit serves to compensate a tort victim for those losses and injuries which are peculiar, or personal, to that victim, while the wrongful death action serves to compensate a legislatively created class of persons for the loss occasioned by the *594 wrongful killing of the decedent. We conclude that the two suits state different causes of action. Therefore, prescription was not interrupted, and the plaintiff's wrongful death action has prescribed.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[1] It should be noted that LSA-C.C. Art. 2315 establishes a prescriptive period for wrongful death actions of one year, reckoning from the date of death. We need not consider the possible conflicts between Art. 2315 and R.S. 9:5629 since, under the particular facts of the instant case, the wrongful death action would be prescribed under either statute, unless some event served to interrupt prescription.
[2] LSA-R.S. 9:5801 was repealed by Act No. 274 of 1982, effective January 1, 1983. The repeal was recommended by the Louisiana State Law Institute because the substance of the statute was included in LSA-C.C. Art. 3462, enacted by Act No. 187 of 1982, effective January 1, 1983, which provides:

"Prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period."
Comment (a) to this article states:
"(a) This provision is new. It is based on Article 3518 of the Louisiana Civil Code of 1870 and on R.S. 9:5801. It does not change the law. Accordingly, Louisiana decisions interpreting the source provisions continue to be relevant, and R.S. 9:5801 is repealed."
[3] This long standing rule has undergone no apparent change, although the reason for the rule was reconsidered in Callais v. Allstate Insurance Co., 334 So.2d 692 (La.1976). In that case, the Supreme Court held that a parent has no general duty to protect a child against the parent's own death, thereby denying wrongful death damages to a child for the death of her father, whose death was caused solely by his own negligence. Thus, the court phrased the problem in terms of duty-risk rather than imputing the negligence of the decedent to an innocent plaintiff. For a complete discussion, see Professor Johnson's excellent article, Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La.L.Rev. 1 (1976).

It should also be noted that the accident occurred on March 7, 1980. Act No. 431 of 1979, rewriting LSA-C.C. Art. 2323 and introducing the concept of comparative negligence, did not become effective until August 1, 1980, and has no application to claims arising before that date. Therefore, any change in the stated rule which might be occasioned by the introduction of comparative negligence has no bearing on this case.