MAX N. TOBIAS, Jr., Judge.
| -, Linda and Roland White, Sr., the plaintiffs/appellants, appeal from a judgment of the Office of Workers’ Compensation Administration (“OWC”) that granted the defendants’ motion for summary judgment. After reviewing the record on appeal and applicable law, we affirm the judgment of the OWC.
On 10 December 2002, Roland White, Jr. sustained a torn rotator cuff injury during the course and scope of his employment with Robinson Lumber Company, Inc. His claim for compensation was accepted as compensable and Robinson Lumber Company, Inc.’s insurer, Louisiana Workers’ Compensation Corporation (hereinafter collectively referred to as the “defendants”) paid workers’ compensation benefits. On 14 May 2004, Roland White, Jr. and the defendants submitted a petition for approval of compromise settlement to the OWC for judicial approval. On 17 May 2004, an order of approval was signed by the OWC, approving an amount of $30,000.00 to settle Roland White Jr.’s claim for benefits.
On 22 May 2004, Roland White, Jr. died. Although the appellate record does not contain a death certificate, the record reflects that “claimant died secondary to pain medication.”
|2On 23 July 2004, the plaintiffs, parents of Roland White, Jr., filed a disputed claim for compensation with the OWC, asserting a claim for workers’ compensation death benefits pursuant to La. R.S. 23:1231.[1] The defendants filed a motion for summary judgment, arguing that Roland White Jr.’s settlement of his own claim for workers’ compensation benefits precluded the claim of his parents for death benefits. *233 The trial court granted the motion, dismissing the claim with prejudice.
The sole issue presented on appeal is whether the settlement agreement between Roland White, Jr. and the defendants precludes his parents’ own claim for workers’ compensation death benefits. Phrased another way, the question is whether the plaintiffs’ claim for death benefits is derivative of the workers’ compensation claim of their son.
We first examine the language of the settlement documents, which contain the following declarations:
1. Employer and Insurer dispute the nature and extent of any disability suffered by the employee.
2. Employee waives all claims to any and all past, present and/or future medical, rehabilitative, indemnity and workers’ compensation benefits, penalties, attorney’s fees or benefits of any kind as it relates to any and all ladaims against Employer and Insurer as a result of said accident.
3. Employee understands that with this payment Employer and Insurer are relieved of any further obligations to provide past, present or future worker’s [sic] compensation benefits of any type.
4. Employer and Insurer shall be forever released and relieved from any and all past, present and/or future liability to and claims of Employee of whatever nature and kind, arising heretofore, or which may hereafter arise under said statute, growing out of the accident or injuries described hereinabove or any other accident or injury occurring prior to this date.
5. Appearer further declares that for and in consideration of the receipt of said payment of THIRTY THOUSAND AND NO/lOO ($30,000.00) DOLLARS, he does hereby release, acquit and forever discharge Robinson Lumber Company, Inc. and Louisiana Worker’s [sic] Compensation Corporation, their employees, officers, directors, stockholders, agents and representatives and any and all other persons, firms, corporations (including, but not in any way limiting the same thereto, the officers, directors and stockholders of said corporations), partnerships and parties whomsoever, from any and all past, present and future claims, demands, compensation, medical expenses, costs, expenses, penalties, attorney’s fees, damages and any and all causes and rights of action, whatsoever, which she may or might have and to which he may be entitled, known and unknown, anticipated and unanticipated, under the workers’ compensation laws of the State of Louisiana, the tort laws, and any and all other laws whatsoever, in any way resulting from and/or to result from the incident which occurred on or about December 10, 2002 or at any time while in the course and scope of his employment with Robinson Lumber Company, Inc.
The Order of Approval submitted by the parties to OWC, was signed by the trial court on 17 May 2004, and contains the following declaration:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that upon said payment of THIRTY THOUSAND AND NO/100 ($30,000.00) DOLLARS Employer and Insurer, shall be forever released and relieved from all past, present, and future medical | ¿expenses, rehabilitative expenses, workers’ compensation benefits, and any and all claims of whatsoever nature and kind, arising *234 heretofore or which may hereafter arise under Title 23, Chapter 10, Revised Statutes of Louisiana, growing out of any accident or injury occurring prior to the date of this agreement, including any right arising out of the chiropractic treatment rendered by Dr. Brandtmeier.
We note that the issue presented herein is res nova in this circuit and the Supreme Court has not spoken on it. However, both the Third and Fifth Circuit Courts of Appeal have addressed the subject. In Condoll v. Johns-Manville Sale Corp., 448 So.2d 169 (La.App. 5 Cir.1984), James Condolí filed a workers’ compensation suit against the defendant/employer, alleging that he contracted a debilitating lung disease from his employment. The parties entered into a court approved settlement whereby Mr. Condolí settled all claims against the defendant for $25,000.00, releasing it from all further liability., Less than one month later, Mr. Condolí died.
His wife filed a claim for death benefits, alleging that her husband died as a direct result of his occupational disease. The defendant filed a motion for summary judgment, which was granted by the trial court. An appeal followed.
The sole issue on appeal was whether a compromise settlement of an injured worker’s disability claim simultaneously compromises and settles the dependent spouse’s claim for death benefits under La. R.S. 23:1061, when the dependent was neither a party 'to the settlement nor received any compensation.
The appellate court stated:
The purpose of LSA-R.S. 23:1231 is to provide for death benefits to the dependents of an injured worker where the injured worker reaches his untimely demise prior to any compromise or adjudication of the of the compensation claim.
| fiThere is no provision in the Workmen’s Compensation Act for the dependent spouse to be a party of a pre-death settlement.
Id. at 172.
In rejecting the plaintiffs appeal, the court held:
Under LSA-R.S. 23:1271, an injured employee or his dependents have the right to compromise a Workmen’s Compensation claim. However, while the injured claimant is alive and has control of his mental faculties, payments are made only to him and in certain specific amounts set out under the Act. It is only upon death of the employee that the “Dependents” are capable of instituting a compensation claim.
While the rights to receive compensation are different for the employee and the dependents, each is based upon the same cause of action, namely, the employee having sustained a compensable injury. Both rights are dependent upon an original interrelationship of employer and employee and must be the result of the contraction of an occupational disease or injury arising out of and in the course of the employment.' The dependent’s right to compensation death benefits and the employee’s right to compensation are so closely related that the parties have a community of interest. Until it is shown that the employee suffered a compensable injury, neither the employee nor the dependent is entitled to compensation. However, when it is established that the employee has suffered a compensable injury, the right to compensation for the injury or disease accrues to the employee and if he dies of such injury or occupational disease, it is in effect continued in favor of his dependents.
The fact that the compensation which the dependent thereby becomes entitled *235 to receive is not new compensation for the death, but continuing compensation for the injury is evident from LSA-R.S. 23:1236 which provides:
Where payments of compensation have been made to the employee -before his death, the compensation for dependents as provided for in this Subpart shall begin on the date of the last of such payments.
| fiIt logically follows that if the dependent’s compensation benefits can be diminished or eliminated, then a dependent should not be allowed to recover death benefits after the injured worker compromised and judicially settled his compensation claim, thereby releasing his employer from all further liability. The Workmen’s Compensation law of this State does not allow a double recovery.
Id. at 172-73.
In Price v. Johns-Manville Sales Corp., 450 So.2d 758 (La.App. 5 Cir.1984), the Fifth Circuit, faced with virtually identical facts as those found in Condolí, stated:
In the Condolí case, this court concluded the purpose of LSA-R.S. 23:1231 was to provide for death benefits to the dependents of an injured employee where the injured employee died prior to any compromise or adjudication of the compensation claim. The dependent’s right is to have the employer continue making to him the compensation being paid to the injured employee at the time of his death rather than a right to establish new compensation benefits for the dependent. Therefore, although the dependent’s right to have the compensation benefits continue is separate from the employee’s right to establish compensation benefits for an injury, the compromise of the employee’s claim forecloses future benefits to the dependent. Hence, following a settlement, there is no longer a right to compensation benefits by either the employee or the dependent unless the compromise judgment can be set aside for fraud, misrepresentation or failure to comply with the compromise procedures of the act. See Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980).
Id. at 759.
The defendants urge the court to follow Condolí and Price, arguing that Roland White, Jr. settled any and all claims arising out of the accident or injury that occurred prior to the date of the settlement, including any right arising out of the chiropractic treatment rendered by Dr. Brandtmeier. The settlement agreement is clear and unequivocal that the defendants were being “relieved of any |7further obligations to provide past, present or future workers’ compensation benefits of any type.”
The plaintiffs rely on a Third Circuit case, Bouy v. Teche Electric Cooperative, Inc., 03-355 (La.App. 3 Cir. 11/26/03), 861 So.2d 712, wherein the court found that the settlement agreement did not extinguish a dependent’s right of action to claim death benefits under the Workers’ Compensation Act. In that case, Mr. Bouy was injured in the course and scope of his employment with the defendant in 1970. He lost one of his legs and settled his compensation claims against his employer and its insurer in 1973. Mrs. Bouy filed a disputed claim for death benefits against Teche following her husband’s death in 2000, alleging that he contracted Hepatitis C from some of the blood transfusions he had while being treated for his injuries and that the Hepatitis C led to his subsequent death.
The court stated:
Mrs. Bouy’s claim for death benefits is not covered in this compromise because *236 we may not presume that a general forfeiture of all claims, no matter how broad, includes claims arising from the party’s death, rather than the injury. La.R.S. 23:1231 gave Mrs. Bouy a right of action upon Mr. Bouy’s death.
We are mindful that the fifth circuit has held that an employee can compromise the rights his dependent has for death benefits because the dependent’s right is derivative of the employee’s claims. These cases considered the employee’s compromise of his own claims to extinguish his or her dependent’s claim for death benefits, viewing the right to death benefits as a continuation of the injured employee’s right to benefits, rather than as a separate and distinct right, arising in the dependent’s favor. However, subsequent to these cases, regarding a similar cause of action, our supreme court has held that a wrongful death tort claim, under La.Civ.Code art. 2315.2, is not derivative of the tort victim’s claim for his or her injuries but, rather, is a separate and distinct action, arising in the beneficiary’s | Rfavor. Thus, we question whether the fifth circuit cases continue to have any validity.
Specifically, even recognizing the possible distinctions between claims for death benefits under the Workers’ Compensation Act and tort claims for wrongful death under La.Civ.Code art. 2315.2, the supreme court’s guidance in evaluating whether a settlement agreement or compromise includes death claims, is instructive in either instance. While our supreme court has held that a pre-death release of a claim, arising from a person’s death, is not against public policy, it has also found that the parties’ intent to include such a release in the settlement agreement must be unequivocally reflected within the document, leaving no question that the parties contemplated such a claim.
In the instant case, the compromise is extremely broad but, also, extremely general in expressing the terms of the claims that the parties intended to compromise. Allegedly, Mr. Bouy’s Hepatitis C resulted from blood transfusions he received when he was treated for the injury to his legs in 1970. The compromise includes only rights and causes of action, arising from direct injuries to his legs. It does not purport to include injuries, arising out of treatment for the injuries. Furthermore, the parties were unaware that he had contracted Hepatitis C when they compromised the claim for his injuries; therefore, they could not have contemplated the inclusion of claims associated with it. Additionally, there is nothing within the compromise agreement’s language which indicates that they contemplated that Mr. Bouy’s injuries would cause his death.
Accordingly, we cannot find that the settlement agreement extinguishes Mrs. Bouy’s right of action to claim death benefits under the Workers’ Compensation Act. Thus, we reverse the WCJ’s grant of Teehe’s exception of no right of action and remand for further proceedings.
Id. at pp. 2-4, 861 So.2d at 714-15 (footnotes omitted).
Because of the Third Circuit’s reliance on two Supreme Court wrongful death cases, we briefly examine them. In Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, a deceased worker’s widow brought a wrongful death faction on her own behalf and on the behalf of her minor child. In response, the defendant moved for entry of summary judgment based on the predeath release executed by the decedent. The trial court held that the surviving spouse could not have compromised her claim for wrongful death before her *237 husband’s death. The First Circuit reversed and the Supreme Court granted the widow’s application for a writ of certiorari.
The Court stated:
To place our analysis of the issue of contractual interpretation presented here in context, we begin by setting forth a basic distinction between the tort victim’s personal injury action and his or her beneficiaries’ wrongful death action under LSA-C.C. Art. 2315.2. Our jurisprudence, as Plaintiff correctly points out, holds that these are legally separate and distinct actions. Taylor v. Giddens, 618 So.2d 834, 840 (La.1993); Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383, 1387 (La.1993); Guidry v. Theriot, 377 So.2d 319 (La.1979). Although both of these actions stem from a common tort, and thus from common factual allegations, under Louisiana law, “the rights arising in instances of this nature are not a single right of action but two separate and distinct actions.” Guidry, 377 So.2d at 322. Indeed, these actions arise at different times and compensate different parties for different injuries.
The tort victim’s personal injury action arises simultaneously with the claimed tortious occurrence and compensates for those injuries wfiich are peculiar and personal to the tort victim. Guidry, supra; Knight v. Samuel, 447 So.2d 587 (La.App. 3d Cir.), writ denied, 449 So.2d 1349 (La.1984). In stark contrast, the beneficiaries’ wrongful death action, by definition, comes into existence upon the tort victim’s death and “serves to compensate a legislatively created class of persons for the loss occasioned by the wrongful killing of the decedent.” Knight, 447 So.2d at 593-94; Daigle, 613 So.2d at 623 (citing Guidry, supra). The beneficiaries’ action encompasses their damages suffered from the moment of the tort victim’s death and thereafter. Taylor, 618 So.2d at 840; Guidry, 377 So.2d at 322. The beneficiaries’ action compensates them for their own personal losses, both economic and emotional, suffered |10as a result of the tort victim’s death. Williams, 611 So.2d at 1387.
In Guidry, supra, we recognized that a necessary corollary of this basis distinction is that the tort victim lacks the power to compromise the beneficiaries’ potential wrongful death action because that action “never existed or arose in favor of the victim.” 377 So.2d at 326. A contrary rule, we explained, would have the following effect:
If the actions are deemed but one cause of action giving rise to recovery by different individuals it would follow that in the event the victim compromised his claim and then died the wrongful death action would be lost to the beneficiary. We do not believe the legislature intended such a result.
Id. at 322.
The rule in Louisiana, however, has long been established: “It was rather early recognized [in Louisiana] that the victim’s compromise of his action and release of the defendant does not bar a wrongful death action by the beneficiaries against the same defendant on the same issues.” H. Johnson, Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La.L.Rev. 1, 47 (1976); Johnson v. Sundbery, 150 So. 299 (La.App. 1st Cir.1933); Gilmore v. Southern Railway Co., 229 F.Supp. 198 (E.D.La.1964); see also Guillory v. Petroleum Helicopters, Inc., 436 So.2d 1280 (La.App. 1st Cir.), writ denied, 441 So.2d 1220 (La.1983) (noting “grave doubts” as to whether indemnity agreement by tort victim was enforceable against wrongful *238 death beneficiaries). Moreover, for almost two decades pre-Daigle, Louisiana jurisprudence held — albeit based on a single appellate court decision incorrectly construing the codal provisions regarding contracting in future rights— that beneficiaries, like tort victims, lacked the power to compromise their wrongful death claims before the tort victim’s death. Schiffman [v. Service Truck Lines, Inc., 308 So.2d 824 (La.App. 4th Cir.1974)], supra. During that period, the release instrument in question was executed; hence, when the release instrument was executed, Louisiana jurisprudence was to the effect that neither the tort victim, Buel Brown, nor his beneficiaries, Ruth and Kimberly Brown, could compromise the future wrongful death claims asserted in this case.
In Id. at pp. 11-13, 630 So.2d at 751-52 (footnotes omitted).
In the second case cited by the Bouy court, Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, the Supreme Court again held:
The plaintiffs urge this Court to find that the wrongful death action is a derivative action “deriving from the wrongful act and injury to the victim whose eventual death results in further injury to the survivors.” The plaintiffs argue that the right to recover, or the “right of action,” arises with the wrongful conduct under La. C.C. art. 2315 that provides: “Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” It is the “act” that causes the injury and gives rise to the right to recover damages, and the wrongful death is derivative of the victim’s underlying injury. Thus, the argument continues, the wrongful death plaintiffs “right of action” arises at the time of injury to the victim and is thus governed under the same law as that which governs the victim’s action. The law in effect on the date of the tortious conduct applies in both the tort victim’s action and the wrongful death claim because La. C.C. art. 2315 “regulates conduct” by holding people accountable for their “acts causing damage.”
* * *
We do not consider the wrongful death action to be a derivative cause of action. Rather, the wrongful death action is an independent and distinct action that arises even in the absence of a viable personal injury action by the direct tort victim and compensates the beneficiaries for their own individual injury arising out of the victim’s death. Taylor v. Giddens, 618 So.2d [834] at 840 [ (La.1993) ]. In Callais v. Allstate Ins. Co., 334 So.2d 692, 700 (La.1976) this court discussed the “nature” of the wrongful death action.
In the context of Article 2315, it is evident that Wrongful [sic] death is a relational concept. It embraces conduct that causes the death of another. It is bilateral in the sense that two parties are involved: the actor, who causes death, and the victim, whose death gives rise to the cause of action.
LaGiven this relational or causative origin, one could be mislead into viewing the wrongful death action as derivative. However, in Taylor v. Giddens, 618 So.2d at 840, this Court left no doubt that the wrongful death action is an independent and separate cause of action. In cataloging the distinctions between the wrongful death action and the survival action we found,
Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. Each right arises at a different time and addresses itself to the recov *239 ery of damages for totally different injuries and losses....
[[Image here]]
... [T]he survival action, which is a[sic] derivative of the malpractice victim’s action, is linked to the inception of the tortious act, omission or neglect. The action is based upon the victim’s right to recovery being transferred by operation of law to the beneficiary. The action is dependent upon the victim having a viable malpractice action on the date of death....
Taylor v. Giddens, 618 So.2d at 840 (emphasis added).
Likewise we characterized the consortium claim as derivative of a primary victim’s injury in Ferrell v. Fireman’s Fund Ins. Co., 96-3028, p. 8 (La.7/1/97), 696 So.2d 569, 574. In that case we explained that “the derivative claim does not come into existence until someone else is injured,” and noted that a derivative claim, “may be regarded as a secondary layer of tort liability to the primary victim.” Id. (emphasis added). As we made clear in our discussion earlier, as well as in Taylor, the wrongful death claim compensates the beneficiaries for their own injuries, separate and distinct from the victim’s injuries, which are compensated through the derivative survival action. The wrongful death cause of action, therefore, could not “be regarded as a secondary layer of tort liability to the primary victim.” Id. The wrongful death cause of action is not a derivative cause of action and plaintiffs’ arguments founded on this concept are also without merit.
Id. at pp. 14-16, 740 So.2d at 1273-74.
| ^Against that backdrop, we turn to the issue presented on appeal: whether the claim for workers’ compensation death benefits is a derivative cause of action. Based on the Supreme Court’s analysis in Broum and Walls and that of the Fifth Circuit in Condolí, we find that it is derivative. A claim for death benefits is not separate and apart from a claim for workers’ compensation. The claim does not come into existence until someone is injured on the job and subsequently dies of those injuries while collecting workers’ compensation benefits. As stated in Con-doll, the compensation which the dependent becomes entitled to is not new compensation for the death but continuing compensation for the injury, as evidenced from La. R.S. 23:1236, infra.
In addition, we find that the settlement agreement entered into by Roland White, Jr., waived all claims “arising heretofore or which may hereafter arise under Title 23, Chapter 10, Revised States [sic] of Louisiana, growing our of any accident or injury occurring prior to the date of this agreement, including any right arising out of the chiropractic treatment rendered by Dr. Brandtmeier.” This agreement encompasses the claim asserted by his parents for death benefits under La. R.S. 23:1231, as well as all claims arising out of the injuries sustained by him in the accident of 10 December 2002. Roland White, Jr. was taking pain medication as the result of the injuries to his left shoulder. Regardless of whether or not his death was accidental, we find that Roland White, Jr. waived his parents’ claim for death benefits when he settled his own claim with the defendants.
Based on the foregoing, we affirm the judgment of the Office of Workers’ Compensation Administration.

AFFIRMED.

LOVE, J., concurs with reasons.

. La. R.S. 23:1231 provides in pertinent part:
A. For injury causing death within two years after the last treatment resulting from the accident, there shall be paid to the legal dependent of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as provided in this Subpart.
[[Image here]]
B. (2) However, if the employee leaves no legal dependents entitled to benefits under any state or federal compensation system, the sum of seventy-five thousand dollars shall be paid to each surviving parent of the deceased employee, in a lump sum, which shall constitute the sole and exclusive compensation in such cases.