PARRO, J.
12In this toxic materials exposure and work hazards case, this appeal was filed on behalf of ten deceased employees[1] whose wrongful death and survivorship claims against their former employer were dismissed as prescribed. After reviewing the record, we affirm the judgment in part, vacate in part, and remand.
FACTUAL AND PROCEDURAL BACKGROUND
This suit was filed on September 9, 2008, by or on behalf of seventy-five former employees of Central Wood Preserving, Inc. (Central Wood) against Employers Insurance Company of Wausau (Employers), which insured three executive officers of the firm who were named as defendants.[2] The petition was later amended to add Central Wood as a defendant. All of the plaintiffs[3] were employed by Central Wood at some point between 1950 and 1976. Their petition alleges that during their employment, they were exposed to toxic materials, including creosote, asbestos, and silica, and as a result of this exposure, suffered various serious illnesses, some of them fatal. They also allege that their exposure to other hazardous working conditions caused damages such as hearing loss and disc degeneration. The claims of the ten appellants in this case, all of whom are deceased, are for wrongful death and survivorship damages.
In July 2010, Employers filed exceptions raising the objection of prescription concerning the claims of two of the plaintiffs, Arthur Williams and Easley Wallace. After a hearing on August 9, 2010, the court sustained the exception as to the claims of Arthur Williams and dismissed his claims. The judgment also sustained the exception as to Easley Wallace’s “claim for damages sustained as the result of prostate cancer only” and dismissed that portion of his claim. The judgment was signed on August 27, | o2010, and Williams and Wallace filed an application for a supervisory writ.
*459 While that writ application was pending, in September 2010, Employers filed two additional exceptions raising the objection of prescription as to the claims of eighteen additional plaintiffs. The court signed a judgment on December 9, 2010, overruling the exceptions as to claims for hearing loss, lung abnormalities, and cardiomegaly filed by seven plaintiffs.[4] In oral reasons for judgment, the court sustained the exceptions as to some or all of the claims of seventeen plaintiffs, stating:
The peremptory exceptions of prescription are sustained as to all other claims by Ben Davis; Percy Davis; Teddy Guy; David Holliday; Clarence Lee; Charles Moten; Henry Taylor; Freddie Thompson; Isiah Davis; Henry Fisher; Joe Fisher, Jr.; John Tate; Joe Louis Wallace; Josh Wallace; [Lewis] Alfred Wallace; Spencer Wallace; and [Earnest] Whitley.
The court also explained that under certain circumstances, the prescriptive period does not begin to run until a plaintiff knew or should have known that he or she had a reasonable basis for pursuing a claim. Acknowledging that these seventeen plaintiffs — and the two whose claims had been dismissed in the prior judgment — may not have known of any reasonable basis until shortly before filing suit, the court stated that the law still required reasonable diligence on the part of the plaintiffs. In this case, the court found the plaintiffs did nothing and took no action. Therefore, the court ruled their claims were prescribed. The December 2010 judgment did not expressly dismiss any plaintiffs suit in its entirety.
On December 17, 2010, this court acted on the earlier writ concerning the claims of Arthur Williams and Easley Wallace. With reference to Arthur Williams, since the district court dismissed the suit in its entirety as to less than all of the parties, this court determined the August 27, 2010 judgment was an appealable partial final judgment. Therefore, the writ was denied, and that portion of the judgment was remanded to the district court with instructions to grant Williams an appeal. As to Easley Wallace, the writ was also denied, but this court declined to exercise its supervisory jurisdiction, because the August 2010 judgment did not expressly dismiss all of Wallace’s claims. | therefore, he would have an adequate remedy on appeal after a final judgment on the merits.
On December 20, 2010, nineteen plaintiffs appealed the August 27, 2010 and December 9, 2010 judgments that had dismissed all or part of their claims. This court issued a rule to show cause, noting that the December 2010 judgment appeared to be a partial judgment that had not been designated as final. This court’s record was supplemented with a judgment signed on May 18, 2011, in which the district court reiterated that the exceptions of prescription were sustained by the December 2010 judgment as to Isiah Davis, Henry Fisher, Joe Fisher, Jr., Joe Louis Wallace," Josh Wallace, Jr., Lewis Alfred Wallace, Spencer Wallace, and Earnest Whitley. The May 2011 judgment also designated the December 2010 judgment as final regarding the claims of these eight plaintiffs, there being no just reason for delay.[5] With this designation, these eight *460 plaintiffs and Arthur Williams had final, appealable judgments.
However, the status of several plaintiffs remained unclear, and this court issued an interim order on August 15, 2011, stating:
The May 18, 2011 judgment designates as final for purposes of immediate appeal the December 9, 2010 rulings regarding eight plaintiffs. However, the May judgment does not refer to the claims of John Tate, Freddie Thompson or Easley Wallace, all of whom are referred to as appellants in various pleadings filed with this Court. Accordingly, the above entitled matter being presently before this Court,
IT IS HEREBY ORDERED that the case be remanded for the limited purpose of allowing the parties to submit memoranda or pleadings to the district court to clarify the status of the appeal, if any, of these three plaintiffs. The appellate record shall be supplemented with any such memoranda, pleadings, or further actions of the district court, within thirty days of this Court’s action. In response to this order, the district court signed a judgment on September 12, 2011, clarifying that the exception of prescription as to the claims of John Tate had also been sustained in the December 2010 judgment, and as to his claims, that judgment was designated as final, with no just reason for delay.
With this clarification, for purposes of this appeal, Arthur Williams has a partial _yudgment against him that this court, in its December 17, 2010 writ action, determined was final under LSA-C.C.P. art. 1915(A)(1),[6] and nine of the plaintiffs who brought this appeal have partial judgments rendered against them on December 9, 2010, which were designated as final by the district court in judgments rendered May 18, 2011, and September 12, 2011,[7] pursuant to LSA-C.C.P. art. 1915(B)(1).[8] On December 20, 2010, these ten plaintiffs had filed a notice of appeal of the August 27, 2010 and December 9, 2010 judgments.[9]
In a writ action on October 14, 2011, a panel of this court considered the district court’s response to this court’s rule to show cause and interim order, maintained the appeal as to the nine plaintiffs, and dismissed the appeal as to the other par *461 ties whose claims were the subject of this court’s May 9, 2011 rule to show cause order. However, the district court did not provide oral or written reasons for its designations of finality in its May 18 and September 12, 2011 judgments concerning the nine plaintiffs whose claims were the subject of this court’s rule to show cause. Therefore, this court must independently determine whether the Article 1915(B) designations were appropriate under the facts of this case. The October 14, 2011 action of the writ panel referred this determination to the panel to which the appeal is assigned. Therefore, before this | ¿panel can address the merits of the appeal, we must decide whether the Article 1915(B) designations of finality were appropriate as to these nine plaintiffs.
DESIGNATION OF FINALITY
In Motorola, Inc. v. Associated In-dem. Corp., 02-1351 (La.App. 1st Cii*.10/22/03), 867 So.2d 723, 732, this court ruled that the failure to provide reasons for a designation of finality under Article 1915(B) was not fatal to this court’s jurisdiction over the appeal. Rather, in cases in which the district court designates a partial judgment as final and the reasons are neither apparent nor provided for us by the district court, we would conduct a de novo review. Id. In so doing, this court would apply the nonexclusive list of factors that Louisiana appellate courts have adopted from the federal courts in determining whether a partial judgment is final, namely: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim that could result in setoff against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Id.; see also R.J. Messinger, Inc. v. Rosenblum, 04-1664 (La.3/2/05), 894 So.2d 1113,1122.
In light of these factors, this court has reviewed the facts in the record underlying the May and September 2011 designations of finality of the December 2010 judgment that dismissed as prescribed the claims of nine plaintiffs. The fact that some plaintiffs in a lawsuit have been dismissed as a result of their individual claims being prescribed does not affect the unadjudicated claims of the remaining plaintiffs in any way, and nothing that is decided by the district court later in this litigation will change a final judgment decreeing that certain claims are prescribed. Moreover, all of these appellants are deceased. By considering the judgments at this time, the claims of the remaining plaintiffs may be addressed more efficiently, and litigation expenses may be reduced. Therefore, based on our review, we conclude that the designations were |7proper. Accordingly, we will address the merits of the arguments set forth in this appeal by the ten appellants.
APPLICABLE LAW

Survival Action

Louisiana Civil Code article 2315.1 grants to designated beneficiaries a right of action to recover the damages that a person suffered and would have been entitled to recover from a tortfeasor, if that person had lived. Article 2315.1(A) states, in pertinent part:
If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or other *462 wise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of [designated beneficiaries].
This is ordinarily called the survival action or the victim’s action. Based on this Article, if a tort victim dies within one year of the offense that caused his injuries, but without having filed suit, his right to assert the underlying cause of action has not yet prescribed and still exists;[10] it survives in favor of the designated beneficiaries, who have one year from his death to institute the action for his injuries. See Guidry v. Theriot, 377 So.2d 319, 324-25 (La.1979). If a beneficiary should die within that year, the heirs of the beneficiary inherit the beneficiary’s right to institute the victim’s action. However, since Article 2315.1(C) does not give the beneficiary’s heirs additional time in which to institute the action, such heirs inherit only the right to institute suit within the remaining time allowed the beneficiary. Guid'ry, 377 So.2d at 324-25. Thus, although the beneficiary’s right of action is heritable, the inheritance of the beneficiary’s right of action neither interrupts nor prolongs the one-year prescriptive period defined in the Article. The action, whether by a beneficiary or his heirs, must be instituted within one year of the victim’s death when no action was instituted by the victim. Id.
The one-year limitation period applicable to survival actions has been held to be peremptive, rather than prescriptive. See Adams v. Asbestos Corp., Ltd., 41,028 (LajApp.g 2nd Cir.5/17/06), 930 So.2d 342, 344-45; Courtland v. Century Indemnity Co., 00-333 (La.App. 5th Cir.10/18/00), 772 So.2d 797, writ denied, 00-3156 (La.2/9/01), 785 So.2d 822; Jones v. Philco-Ford Corp., 452 So.2d 370, 372 (La.App. 1st Cir.), writs denied, 457 So.2d 1193 and 1198 (La.1984); McClendon v. State, 857 So.2d 1218, 1223 (La.App. 1st Cir.1978).
In the Guidry case, the Louisiana Supreme Court examined the source provision of Article 2315, which was Article 2294 of the Civil Code of 1825, and observed that Article 2294 was amended by Act 223 of 1855 to provide that a tort victim’s action survived in favor of named beneficiaries “for the space of one year from death.” Guidry, 377 So.2d at 325. We note that additional amendments to the Article have been made since the Gui-dry decision, and the pertinent time-limit language remained the same. Article 2315.1 was added by 1986 La. Acts, No. 211, § 2,[11] which separated the survival action and the wrongful death action from the general tort provisions of Article 2315. Through all the revisions, the statement that “the right to recover all damages for injury to that person ... shall survive for a period of one year from the death of the deceased” continued unchanged. (Emphasis added). See LSA-C.C. art. 2315.1. In contrast, the language of Article 2315.2, setting out the wrongful death action, states that the “right of action granted by this Article prescribes one year from the death of the deceased.” (Emphasis added). See LSA-C.C. art. 2315.2(B). This distinct difference in phrasing reflects the difference between peremption, which extinguishes a right upon the expiration of the peremptive period, and liberative prescription, which merely sets a time limit within which one is allowed to seek enforcement of a right. See LSA-C.C. arts. 3458 and 3447. Moreover, the word “survive” means “to remain alive or in exis *463 tence.” Webster’s Third New International Dictionary 2303 (1966). If the right specified in Article 2315.1 only survives for one year after the victim’s death, it goes out of existence after that time. Thus, the language of the Article supports the conclusion that the one-year period specified | ¡¡therein is peremptive.
Furthermore, our jurisprudence has developed a number of tests for determining whether a period for instituting an action is peremptive or prescriptive, one of which is whether the statute creating the right also stipulates the time in which it must be exercised. See Guidry, 377 So.2d at 325. The right to bring the victim’s claim after his death was created by the source provisions of Article 2315.1, which also set forth the time in which it must be exercised. Additional inquiries shedding light on this issue are legislative intent, revealed by the source provisions of the Article in its entirety, including the purpose sought to be achieved, and the public policy underlying the provision. Id. at 325-26. Noting that the survival action gives the designated beneficiary a time bonus of more than one year in which to institute the victim’s action, the Guidry court stated, “We deem it reasonable that the legislature would be concerned about the interval during which a potential defendant might be vulnerable to a survival action and therefore foreclosed the issue by providing an express time limitation.” Id. at 326. Thus, the legislative intent and public policy considerations support the conclusion that the one-year period, during which the right to bring the victim’s action survives, is a peremptive period.

Wrongful Death Action

Louisiana Civil Code article 2315.2 grants to designated beneficiaries the right to recover from a tortfeasor the damages the beneficiaries have suffered when a person has died as a result of a tort. Article 2315.2 states, in pertinent part:
A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death: [designated beneficiaries].
B. The right of action granted by this Article prescribes one year from the death of the deceased.
C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.
This right of action is ordinarily called the wrongful death action or the beneficiaries’ action. The wrongful death action does not arise until the injured person dies. It is 11 (Intended to compensate the beneficiaries for compensable injuries suffered by them from the moment of death and thereafter. Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, 1273, citing Taylor v. Giddens, 618 So.2d 834, 840 (La.1993). With reference to the wrongful death action, regardless of whether an action for damages sustained by the tort victim is brought before or after the victim expires, the prescriptive period for bringing the wrongful death action is one year after the date of the demise or within one year of interruption of the prescriptive period if an interruption is shown. Guidry, 377 So.2d at 327.

Prescription/Contra Non Valentem

Prescription statutes are intended to protect defendants against stale claims and the lack of notification of a formal claim within the prescriptive period. In re Brewer, 05-0666 (La.App. 1st Cir.5/5/06), 934 So.2d 823, 826, writ denied, 06-1290 (La.9/15/06), 936 So.2d 1278. However, they are strictly construed against prescription and in favor of main *464 taining the right of action. Babineaux v. State ex rel. Dept. of Transp. and Dev., 04-2649 (La.App. 1st Cir.12/22/05), 927 So.2d 1121,1124.
Ordinarily, the party pleading prescription bears the burden of proving the right to bring the claim has prescribed. However, when the face of the petition reveals that the plaintiffs right has prescribed, the burden shifts to the plaintiff to demonstrate prescription was interrupted or suspended. London Towne Condo. Homeowner’s Ass’n v. London Towne Co., 06-401 (La.10/17/06), 939 So.2d 1227, 1234; Taylor v. Babin, 08-2063 (La.App. 1st Cir.5/8/09), 13 So.3d 633, 642, writ denied, 09-1285 (La.9/25/09), 18 So.3d 76; Kirby v. Field, 04-1898 (La.App. 1st Cir.9/23/05), 923 So.2d 131, 135, writ denied, 05-2467 (La.3/24/06), 925 So.2d 1230. At the trial of a peremptory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. LSA-C.C.P. art. 931; Bracken v. Payne and Keller Co., Inc., 06-0865 (La.App. 1st Cir.9/5/07), 970 So.2d 582, 587.
To soften the occasional harshness of prescription statutes, Louisiana courts have recognized a jurisprudential exception to prescription with contra non valen-tem _L¡¿non cwrrit praescriptio, which means prescription does not run against a person who could not bring suit. Jenkins v. Starns, 11-1170 (La.1/24/12), 85 So.3d 612, 623. The doctrine of contra non va-lentem is a Louisiana jurisprudential doctrine under which prescription may be suspended. Id. The Louisiana Supreme Court has recognized four instances where contra non valentem applies to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. Id. at 623. This is commonly known as the discovery rule.
The key inquiry in most contra non valentem cases is the commencement date of the prescriptive period under the discovery rule. The doctrine itself is based on the theory that when the claimant is not aware of the facts giving rise to his or her cause of action against the particular defendant, the running of prescription is for that reason suspended until the tort victim discovers or should have discovered the facts upon which his or her cause of action is based. It is often difficult to identify a precise point in time at which the claimant becomes aware of sufficient facts to begin the running of prescription. Doe v. Delta Women’s Clinic of Baton Rouge, 09-1776 (La.App. 1st Cir.4/30/10), 37 So.3d 1076, 1080, writ denied, 10-1238 (La.9/17/10), 45 So.3d 1055. Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury. When prescription begins to run depends on the reasonableness of a plaintiffs action or inaction. Jordan v. Employee Transfer Corp., 509 So.2d 420, 423 (La.1987).
Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a [ |2tort. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502, 510. Con *465 structive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Medical Review Panel Proceeding of Williams v. Lewis, 08-2223 (La.App. 1st Cir.5/13/09), 17 So.3d 26, 29; Doe, 37 So.3d at 1081. Mere apprehension that something might be wrong does not make delay in filing suit unreasonable, nor does knowledge that one has a disease. Ducre v. Mine Safety Appliances, 963 F.2d 757, 760 (5th Cir.1992). Further complicating the situation, the plaintiffs cause of action in a long-latency occupational disease case accrues when the tor-tious exposures are significant, such that they will later result in the manifestation of the disease. Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137, 1154; Cole v. Celotex, 599 So.2d 1058,1066 (La.1992).
Once prescription is interrupted by the filing of a suit, that interruption continues during the pendency of the suit. See LSA-C.C. art. 3463. Some intermediate appellate decisions have spoken of the filing and pendency of a suit as interrupting and suspending prescription. However, the correct characterization is continuous interruption, rather than a suspension of prescription. Louviere v. Shell Oil Co., 440 So.2d 93, 96-97 (La.1983).
The basic difference between interruption and suspension of prescription is the length of the prescriptive period when prescription begins to run anew. When prescription is interrupted, the prescriptive period starts over in its entirety upon cessation of the interruption. Thus, when a one-year prescriptive period is interrupted at any time during the year by the filing of suit and the suit is subsequently dismissed without prejudice, the plaintiff has another full year in which to bring another suit, and that second one-year period begins to run anew from the last day of interruption. See LSA-C.C. art. 3466. On the other hand, if a one-year prescriptive period is suspended for any reason, the “clock” merely stops during the suspension and starts again at the cessation of the suspension, so that the obligee has only so much of the one year as was remaining when the suspension began. The period of suspension is not counted | ^toward the accrual of prescription. See LSA-C.C. art. 3472; Louviere, 440 So.2d at 97 n. 8. The doctrine of contra non valentem is a Louisiana jurisprudential doctrine under which prescription may be suspended. Jenkins, 85 So.3d at 623.

Peremption

Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the per-emptive period. LSA-C.C. art. 3458. Li-berative prescription merely prevents the enforcement of a right of action; in contrast, peremption destroys the right itself. See Pounds v. Schori, 377 So.2d 1195,1198 (La.1979). Prescription under the Civil Code may be interrupted by the filing of suit by an obligee against an obligor or by acknowledgment by the obligor of the obli-gee’s right. See LSA-C.C. arts. 3462, 3463, and 3464. Nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as contra non valen-tem are not applicable. State Bd. of Ethics v. Ourso, 02-1978 (La.4/9/03), 842 So.2d 346, 349; see LSA-C.C. art. 3461; but see Evans v. CanadianOxy Offshore Prod. Co., 98-835 (La.App. 3rd Cir.12/9/98), 730 So.2d 466, 469, writ granted, judgment vacated on other grounds, 99-0061 (La.3/19/99), *466 739 So.2d 214 (per curiam) (peremption of plaintiffs’ survival action is suspended under contra non valentem if defendant’s fraud prevented the exercise of their rights).
If the intent of the time limit is to bar enforcement of a substantive right or cause of action, it is prescriptive; if the intent is to limit the existence or the duration of the right granted, it is peremp-tive. See LSA-C.C. art. 3458, Revision Comments-1982, comment (c); State in the Interest of Taylor, 637 So.2d 512, 514 (La.App. 1st Cir.1993). One indication of legislative intent to create a peremptive period is the legislature’s placement of the time limitation in the statute creating the right. Schulin v. Service Painting Co. of Louisiana, 479 So.2d 939, 943 (La.App. 1st Cir.1985), writ denied, 481 So.2d 634 (La.1986). Peremption may be pleaded or supplied by the court on its own motion at any time prior to final judgment. LSA-C.C. art. 3460.
| uProper Parties, Right of Action, and Substitution
The objection of no right of action tests whether the plaintiff who seeks relief is or is not the person in whose favor the law extends a remedy. Howard v. Administrators of Tulane Educ. Fund, 07-2224 (La.7/1/08), 986 So.2d 47, 59. The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring suit, but it assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Taylor, 13 So.3d at 637; Reese v. State Dep’t of Pub. Safety and Corr., 03-1615 (La.2/20/04), 866 So.2d 244, 246. The peremptory exception raising the objection of no right of action may be noticed by either the trial or appellate court on its own motion. LSA-C.C.P. art. 927(B).
The court cannot render a judgment for or against a deceased person, as such is an absolute nullity. Carr v. Hibernia Nat’l Bk, 95-1342 (La.App. 1st Cir.9/25/98), 720 So.2d 81, 82, writ not considered, 98-2246 (La.11/13/98), 730 So.2d 451, reconsideration not considered, 98-2246 (La.1/15/99), 735 So.2d 645; Benware v. Means, 98-0203 (La.App. 1st Cir.5/12/00), 760 So.2d 641, 645, writ denied, 00-2215 (La.10/27/00), 772 So.2d 650. However, an action does not abate on the death of a party. LSA-C.C.P. art. 428. An action to enforce an obligation is the property of the obligee. On his death, that action is transmitted with his estate to his heirs, universal legatees, or legatees under a universal title, except as otherwise provided by law. These rules apply to a right to enforce an obligation when no action thereon was commenced prior to the obli-gee’s death. See LSA-C.C.P. art. 426. When a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself substituted for the deceased party, on ex parte written motion by proof of his quality. See LSA-C.C.P. arts. 801 and 821.
ANALYSIS
The petition in this case alleges that all the plaintiffs worked for Central Wood at various times from 1950 to 1976, during which employment periods they were | ir,exposed to hazardous working conditions and toxic substances at work, such as creosote, CCA (copper, chromium, and arsenic), asbestos and/or asbestos containing products, and silica and/or silica containing products, which caused their various illnesses. The petition was filed on September 9, 2008. The petition claims the plaintiffs were completely ignorant of *467 the dangers and hazards to which they were exposed while working for Central Wood, and their legal representatives had only recently, through no lack of diligence whatsoever on their part, been advised that the plaintiffs’ damages were caused by their exposure to dangerous substances and other work hazards. The petition did not state when or how this information became known to the plaintiffs’ legal representatives, but it invoked the protection of the jurisprudential rule of contra non valentem, which provides that prescription does not run against a party who is unable to act.
The petition and other pleadings acknowledged that all ten of the employees represented in this appeal are deceased. The petition further stated that each of the spouses of the deceased former employees, along with their children and other legal heirs, joined in the action as wrongful death and survival plaintiffs under Civil Code articles 2315.1 and 2315.2. However, the relationships of the plaintiffs’ “legal representatives” named in the petition were not provided, nor, at the time notice of this appeal was given, had any of these persons been substituted as plaintiffs for the deceased persons whom they purportedly represent. In support of its exceptions raising the objection of prescription, Employers filed the appellants’ responses to interrogatories and copies of the appellants’ death certificates. In opposition to the exceptions, an affidavit and medical records were filed on behalf of Arthur Williams.
The pleadings and evidence submitted in connection with Employers’ exceptions contain the following relevant factual information concerning the individual appellants:
(1) Arthur Williams worked for Central Wood from 1961 to 1963. He was diagnosed with lung cancer in early 2007 and died from that disease on June 11, 2007, at the age of 66. The petition does not show anyone as his legal representative. However, Fannie W. Williams is shown as his widow on the |lfideath certificate, and she stated in an affidavit in opposition to the exception that she is his widow. She further averred that neither she nor her husband were ever told that his exposure to chromium, arsenic, creosote, and/or asbestos was the cause of his lung cancer, nor were they aware that his disease and subsequent death could have been caused by his exposure to those substances until immediately before filing suit in 2008.
(2) Isiah Davis worked for Central Wood from 1950 through 1992.[12] He was diagnosed with colon cancer in 2002 and died at the age of 68 on January 3, 2005, from acute pulmonary edema. His death certificate shows that he was never married. The petition states that he is legally represented by Eula Matthews.
(3) Henry Fisher worked for Central Wood from 1950 to 1985. He was diagnosed with acute myelocytic leukemia in 1985, and died from that illness on May 1, 1985, at the age of 54. His death certificate shows him as married to Elizabeth Brown Fisher, but the petition shows his legal representative is Laura Mae Kelly.
(4) Joe Fisher, Jr. worked for Central Wood from 1964 to 1991. He experienced hearing loss and was diagnosed *468 with bladder cancer in 2006. He died from bladder cancer on September 27, 2006, at the age of 76. His death certifí-cate shows him as widowed. The petition states his legal representative is Yolanda G. Fisher.
(5) John S. Tate, Jr. worked for Central Wood from 1950 to 1985. He was diagnosed with colon cancer in 2000 and died from metastatic colon cancer on December 30, 2004, at the age of 71. His death certifícate shows him as widowed; the petition shows he is legally represented by Jerry Tate.
(6) Joe Louis Wallace worked for Central Wood from 1960 to 1980. His |17father, Spencer Wallace, is also an appellant in this matter. In 2003, Joe Wallace was diagnosed with colon cancer and died from that disease on June 8, 2003. His death certificate shows him as never married, but the petition states that he is legally represented by Vera London Wallace, who also represents Spencer Wallace.
(7) Josh Wallace, Jr. worked for Central Wood from 1946 to 1987. He was diagnosed with colon cancer in 1990 and died from metastatic colon cancer on April 7, 1990, at the age of 57. The death certificate indicates he was married to Annie Mae Powell Wallace; the petition states his legal representative is Anna Wallace.
(8) Lewis Alfred Wallace worked for Central Wood from 1968 to 1971. His father, Easley Wallace, is another plaintiff in the suit. Lewis was diagnosed with gastric cancer in 2002 and died at the age of 53 on June 19, 2002. The death certificate shows he was married to Delores Davis Wallace, and the petition states he is legally represented by Delores Wallace.
(9) Spencer Wallace worked for Central Wood from 1950 to 1985. He was diagnosed with lung cancer and squamous cell carcinoma in 1985 and died at the age of 61 on June 29, 1985. His death certificate states the cause of death as cardiac — respiratory arrest, hypercalce-mia — possible brain metastasis, and metastatic squamous cell carcinoma. His death certificate shows he was married to Carrie Wallace; the petition states his legal representative is Vera London Wallace.
(10) Earnest Whitley worked for Central Wood from 1964 to 1972. In 2005, he was diagnosed with chronic obstructive pulmonary disease (COPD), head, neck, and lung cancer, and myeloproli-ferative disorder. He died from COPD on March 26, 2005, at the age of 75. His death certificate shows he was divorced; the petition shows Greg Whitley as his legal representative.
Because the petition shows that the plaintiffs’ periods of employment, and thus | istheir exposure to work-related hazards, terminated in 1976,[13] their lawsuit, filed in 2008, is prescribed on its face. However, a petition should not be found prescribed on its face if it is brought within one year of the date of discovery of the cause of action, and facts alleged with particularity in the petition show that the victim was unaware of the cause of action prior to the alleged date of discovery, and the delay in filing suit was not due to willful, negligent, or unreasonable action of the victim. See Campo, 828 So.2d at 509. In the case before us, the invocation by the plaintiffs of the doctrine of contra non valentem in the petition does not include sufficient factual information to ascertain when and *469 how the plaintiffs may have obtained the information prompting them to file suit, and why their delay was not due to willful, negligent, or unreasonable action on their parts. Accordingly, the plaintiffs’ claims are prescribed on the face of the petition, and the plaintiffs bear the burden of proving that the running of the one-year prescriptive period applicable to their claims was suspended or interrupted.
Based on these facts, we conclude that the survival actions are per-empted, and therefore, are no longer in existence. All of these plaintiffs’ causes of action involved long-latency occupational diseases. As such, their causes of action accrued when the tortious exposures were significant, such that they later resulted in the manifestation of disease. Austin, 824 So.2d at 1154; Cole, 599 So.2d at 1066. In every case, suit was not instituted by the victims within one year from the time their causes of action accrued, because they allegedly did not know the causes of their illnesses. So contra non valentem would have preserved their claims until their deaths. They died without filing suit. Their rights of action survived only one year after their deaths. Because that one-year period is peremptory, it cannot be suspended or interrupted. Therefore, the doctrine of contra non valentem cannot be applied as a defense against the running of the peremptive period as to their designated beneficiaries. Their designated beneficiaries had only one year from their deaths to exercise their right of action and | mbring the victims’ claims to court.
Although Employers’ exceptions would more properly have been designated as raising the objection of peremption, we can raise this objection on our own motion and apply the appropriate law to the resolution of the exceptions. Applying that law, we conclude that the district court did not err in sustaining the exceptions as to the survival actions concerning the ten appellants.
The one-year period for bringing a wrongful death action has been held to be prescriptive, and therefore, the defense of contra non valentem would be applicable to this cause of action. See Guidry, 377 So.2d at 325. However, we do not reach the issue of whether contra non valentem operated in this case to suspend the running of prescription, because we conclude that none of the named plaintiffs, whose claims are involved in this appeal, had a right of action for wrongful death. A wrongful death action does not assert any rights belonging to the deceased person; it only asserts the rights of the statutorily designated beneficiaries. Article 2315.2 unambiguously expresses that the wrongful death action compensates the designated beneficiaries for their own injuries suffered as a result of the victim’s death. Walls, 740 So.2d at 1270. As such, the named plaintiffs, all deceased, have no right of action for wrongful death damages due to their own deaths. That right of action must be exercised by their beneficiaries.
We acknowledge that the petition states that those beneficiaries, spouses, children, and other legal heirs join as plaintiffs in this lawsuit to assert the wrongful death action. However, the petition does not state who those beneficiaries are or how the named “legal representatives” meet the statutory requirements for a beneficiary under Article 2315.2. Therefore, their rights to bring the action are not established, either by the petition or other evidence in the record.[14] The peremptory exception raising the objection of *470 no right of action may be raised by the appellate court on its own motion, and we do so in this case. See LSA-C.C.P. art. 927(B); Niemann v. Crosby | inDev. Co., L.L.C., 11-1337 (La.App. 1st Cir.5/3/12), 92 So.3d 1039, 1043 n. 4; Gisclair v. Louisiana Tax Com’n, 10-0563 (La.9/24/10), 44 So.3d 272, 273 (per curiam), quoting Howard, 986 So.2d at 59. Further, based on the record before us, we sustain the peremptory exception of no right of action noticed by this court on our own motion. See Gisclair, 44 So.3d at 273.
According to LSA-C.C.P. art. 934, when the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. Therefore, we will vacate the judgment as it pertains to the wrongful death actions, dismiss without prejudice the claims of the named plaintiffs/appellants, and remand to the trial court to order amendment of the pleadings to name the proper parties to bring the wrongful death actions. The trial court may conduct an evidentiary hearing to allow the appropriate plaintiffs to demonstrate by admissible evidence that each of them fall within the categories of beneficiaries designated in Article 2315.2[15] and also to demonstrate when and how each of them discovered the causes of the victims’ illnesses and deaths.[16] The defendants may then refile their exceptions, referencing the proper parties.
CONCLUSION
Based on the foregoing, we affirm that portion of the August 27, 2010 and December 9, 2010 judgments that dismissed the survival actions under LSA-C.C. art. 2315.1, as those rights of action have been extinguished by peremption. The portions of those judgments that dismissed the wrongful death actions are vacated, and this case is remanded to the district court with instructions to order amendment of the petition to name as plaintiffs the decedents’ designated beneficiaries under LSA-C.C. art. 2315.2 and to allow them to establish their status by competent evidence showing they have a right of action to bring the wrongful death claims. Each party is to bear its |21own costs of this appeal.
AFFIRMED IN PART; VACATED IN PART; REMANDED WITH ORDER.

.The named appellants are Arthur Williams, Isiah Davis, Henry Fisher, Joe Fisher, Jr., Joe Louis Wallace, Josh Wallace, Jr., Lewis Alfred Wallace, Spencer Wallace, Earnest Whitley, and John S. Tate, Jr., all of whom are deceased. Although their names are sometimes spelled differently in the record, we have used the names as shown on their death certificates. The petition in this case provides the name of a "legal representative" for each of the deceased employees.

. These officers, John Barnett, Jr., Jasper B. Herrod, and Richard W. Barnett, were also deceased by the time hearings were held on exceptions in this case.

. For the sake of brevity, the ten deceased employees will be referred to as the plaintiffs or appellants.

. Ben Davis, Percy Davis, Teddy Guy, David Holliday, Clarence Lee, Charles Moten, and Henry Taylor were the seven plaintiffs with claims of hearing loss; David Holliday also had a claim of lung abnormalities, and Clarence Lee had a claim of cardiomegaly.

. All of these plaintiffs were deceased over one year before the suit was filed.

. Article 1915(A) states, in pertinent part:
A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court: (1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or interve-nors.

. The May 18, 2011 judgment designated as final the judgment of December 9, 2010, dismissing the claims of Isiah Davis, Henry Fisher, Joe Fisher, Jr., Joe Louis Wallace, Josh Wallace, Jr., Lewis Alfred Wallace, Spencer Wallace, and Earnest Whitley. The September 12, 2011 judgment designated as final the dismissal of John S. Tate, Jr.'s claims. This court had earlier determined that the judgment dismissing Arthur Williams' claims was final.

. Article 1915(B)(1) states:
When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

. The notice of appeal states the appeal is from the August 30, 2010 and December 9, 2010 judgments; however, there was no judgment signed on August 30, 2010, so we have considered this an appeal of the August 27, 2010 and December 9, 2010 judgments.

. Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. LSA-C.C. art. 3492.

. This Article was added as Article 2315.3. It has been redesignated as Article 2315.1 under the authority of the Louisiana State Law Institute.

. The answers to interrogatories concerning Mr. Davis stated that he worked there from 1950 to 1992; however, the plaintiffs’ brief in opposition to the exceptions states that he worked there from 1950 to 1972. Since the answers to interrogatories are sworn to be correct, we have used the date provided there.

. We note that this statement is belied by the work periods shown for many of the individual plaintiffs However, none of the plaintiffs were still working for the company within one year before suit was filed.

. Although Arthur Williams’ widow filed an affidavit that stated she had been married to him, she did not amend the petition to assert, on her own behalf, the wrongful death action.

. See LSA-C.C.P. arts. 931 and 2163; Niem-ann, 92 So.3d at 1049 n. 9.

. For judicial efficiency, this evidentiary hearing could also consider similar evidence concerning the wrongful death claims of any other of the named plaintiffs who are deceased, but whose claims were not addressed in the judgments and are not involved in this appeal.